[Sac. No. 68.    Department Two.—March 18, 1896.]

HENRY JACOB ET AL., APPELLANTS, v. JOHN C. DAY ET AL., RESPONDENTS.

WATER RIGHTS—HYDRAULIC MINING—EASEMENT FOR TAILRACE—RIGHT OF WAY UNDER ACT OF CONGRESS.—The use of water for the purpose of carrying off the tailings, and the construction of a ditch to aid therein, are as essential to the successful conduct of hydraulic mining, as is the first use to which the water is put in washing down the natural bank; and the title to an adjoining mine passes under patent from the United States subject to the easement of the right of way for a ditch used, in accordance with local mining customs, as a tailrace from a hydraulic mine across the patented ground prior to the patent under the provisions of sections 2339 and 2340 of the Revised Statutes of the United States.

ID.—MINING CUSTOMS—EVIDENCE—PLEADING.—In support of title, evidence of mining rules and customs may be given under the general issue, without specially pleading such rules and customs.

ID.—EASEMENT FOR DRAINAGE—DITCHES FOR MINING PURPOSES—CONSTRUCTION OF ACT OF CONGRESS.—The easement for the tailrace of a hydraulic mine is not an easement for drainage within the meaning of section 2338 of the Revised Statutes of the United States, excluding easements for drainage from the purview of the act of Congress; but is a right to the use of water for mining purposes and for the construction of ditches for such purposes within the meaning of sections 2339 and 2340 of said statutes.

ID.—CONTEST OF MINING PATENT—ESTOPPEL OF FORMER JUDGMENT—PLEADING.—Where the holder of a mining patent suing as plaintiff relies upon an estoppel of a former judgment against the predecessors of the defendants in support of his title, rendered in a contest of the application for the patent, it is proper that he should plead such estoppel, and it is error to strike it from the complaint, when properly pleaded.

ID.—INSUFFICIENT PROOF OF ESTOPPEL—JUDGMENT OF NONSUIT—CLAIM OF EASEMENT.—Where, in the contest of plaintiff's application for a patent, the predecessor of defendants instituted a suit opposing the application in so far as it affected the strip of land which embraced the ditch claimed by him, and transferred by him to the defendants, and was nonsuited upon a motion stating as grounds therefor that the plaintiff in the action merely had an easement over the land of de-

fendant and that his rights were fully protected under section 2339 and 2340 of the Revised Statutes of the United States, such judgment of nonsuit can be no estoppel against a claim by his successors in interest that they are the owners of such an easement.

ID.—USE OF EASEMENT—MAXIMS — SLIGHT INJURY FROM TAILRACE — INJUNCTION.—An easement must be used in such a manner as to impose as slight a burden and damage as possible, under the application of the maxim *sic utere tuo ut alienum non lædas;* but where a tailrace of a hydraulic mine is an easement upon patented mining ground, the fact that the running of the tailings through the tailrace in the ordinary course of mining caused a small portion of the ground alongside of the ditch to cave down and wash away, and caused the tailrace to cut farther into the bedrock, but without material or appreciable injury to plaintiff, the rule *de minimis* applies, and the owner of the patented ground is not entitled to an injunction.

APPEAL from a judgment of the Superior Court of Trinity County and from an order denying a new trial. EDWARD SWEENY, Judge.

The facts are stated in the opinion of the court.

*John W. Turner,* and *Horace R. Given,* for Appellants.

Defendants have no rights under section 2339 of the Revised Statutes of the United States for a right of way for a tailrace to convey debris from a mine. (*Broder* v. *Natoma Water Co.,* 50 Cal. 621; 101 U. S. 274; *Osgood* v. *El Dorado Water etc. Co.,* 56 Cal. 571; *Farley* v. *Spring Valley etc. Co.,* 58 Cal. 142; *Jacob* v. *Lorenz,* 49 Cal. 3ˣ3; *Frisbie* v. *Whitney,* 9 Wall. 187; *Western Pac. R. R. Co.* v. *Tevis,* 41 Cal. 489; *Hill* v. *Lenormand,* 16 Pac. Rep. 268; *Ellis* v. *Pomeroy Imp. Co.,* 1 Wash. 572; *Hart* v. *Plum,* 14 Cal. 154; *Merritt* v. *Judd,* 14 Cal. 64; *Collins* v. *Bartlett,* 44 Cal. 371; *Newton* v. *Thornton,* 5 West Coast Rep. 135; *Lee Doon* v. *Tesh,* 68 Cal. 43; *Jennison* v. *Kirk,* 98 U. S. 453–60; *People* v. *District Court,* 17 Pac. Rep. 298; *Lux* v. *Haggin,* 69 Cal. 255; *Dower* v. *Richards,* 73 Cal. 477; *Consolidated Channel Co.* v. *Central Pac. R. R. Co.,* 51 Cal. 269; *Amador Queen etc. Co.* v. *De Witt,* 73 Cal. 482; *Scholl* v. *Albany etc. Steel Co.,* 101 N. Y. 602; *Lorenz* v. *Jacob,* 63 Cal. 73; *Cummings* v. *Peters,* 56 Cal. 593; *Edgewood R. R. Co.'s Appeal,* 79 Pa. St. 257; *People*

v. *Pittsburg R. R. Co.*, 53 Cal. 694; *Hammer* v. *Garfield Min. etc. Co.*, 130 U. S. 291; *Belk* v. *Meagher*, 104 U. S. 360; *Proctor* v. *Jennings*, 6 Nev. 83; 3 Am. Rep. 240; *Covington* v. *Becker*, 5 Nev. 281; *Crandall* v. *Woods*, 8 Cal. 141.)   The easement cannot be enlarged to the injury of the servient estate.   (Gale on Easements, 3d ed., 495; Wood on Nuisances, secs. 705–19; *Allen* v. *San Jose, etc. Co.*, 92 Cal. 138; *Gregory* v. *Nelson*, 41 Cal. 278; *Barrows* v. *Fox*, 98 Cal. 63; *Goldsmid* v. *Tunbridge*, L. R. 1 Eq. Cas. 161; L. R. 1 Ch. App. 352; *Ball* v. *Ray*, 8 Ch. App. 467.)   The plea of estoppel was properly set up and the court erred in striking it out, and also in excluding the judgment-roll.   (Bliss on Code Pleading, sec. 364; *Jackson* v. *Lodge*, 36 Cal. 38; *Gooding* v. *Underwood*, 89 Mich. 187; *Rail* v. *Bank*, 22 S. W. Rep. 865 (Tex. Civ. App.); *Cromwell* v. *County of Sac*, 94 U. S. 351; *Hamm* v. *Arnold*, 23 Cal. 373; *Caperton* v. *Schmidt*, 26 Cal. 494; 85 Am. Dec. 187; *Hager* v. *Shindler*, 29 Cal. 57; *Davis* v. *Brown*, 94 U. S. 423; *San Francisco* v. *Spring Valley W. W.*, 39 Cal. 481; *Clark* v. *Dunnam*, 46 Cal. 206; *Hooker* v. *Hubbard*, 102 Mass. 239; *Philadelphia etc. R. R. Co.* v. *Howard*, 13 How. 307.)

*Cross, Ford, Kelly & Abbott*, for Respondents.

Defendants, or their predecessors in interest, acquired a right of way for the ditch in question by virtue of section 2339 of the Revised Statutes of the United States, while the land through which the ditch was constructed was still part of the public domain.   (Civ. Code, sec. 1425; *Colman* v. *Clements*, 23 Cal. 247; *Jennison* v. *Kirk*, 98 U. S. 453; *Broder* v. *Natoma Water etc. Co.*, 50 Cal. 621; 101 U. S. 274; *Osgood* v. *Eldorado Water etc. Co.*, 56 Cal. 571; *Cox* v. *Clough*, 70 Cal. 347; *De Necochea* v. *Curtis*, 80 Cal. 399; *Ramelli* v. *Irish*, 96 Cal. 214; *Jacob* v. *Lorenz*, 98 Cal. 334; *Van Sickle* v. *Haines*, 7 Nev. 249; *Barnes* v. *Sabron*, 10 Nev. 217; *Shoemaker* v. *Hatch*, 13 Nev. 261; *Rivers* v. *Burbank*, 13 Nev. 402; *Denver* v. *Mullen*, 7 Col. 345; *Ellis* v. *Pomeroy Imp. Co.*, 1 Wash. 572; *Basey* v. *Gallagher*, 20 Wall. 670; *People* v. *Parks*,

58 Cal. 639.)   There has been no change in the char-
acter of the easement.   (*Allen* v. *San Jose etc. Water Co.*,
92 Cal. 138.)   A nonsuit is no bar to another action
upon the same cause of action.   (21 Am. & Eng. Ency.
of Law, 271, and cases cited; 2 Black on Judgments, sec.
699; Freeman on Judgments, sec. 261; Bigelow on Es-
toppel, 29; *Wood* v. *Ramond*, 42 Cal. 643; *Greer* v. *Tripp*,
56 Cal. 209; *Fleming* v. *Hawley*, 65 Cal. 492; *Morgan* v.
*Bliss*, 2 Mass. 111; *Marsh* v. *Hammond*, 11 Allen, 483;
*Clapp* v. *Thomas*, 5 Allen, 158; *Haynes* v. *Jackson*, 66
Me. 93; *Jay* v. *Carthage*, 48 Me. 353; *Pendergrass* v. *York
Mfg. Co.*, 76 Me. 509; *Coit* v. *Beard*, 33 Barb. 357; *More-
land* v. *Gordner*, 109 Pa. St. 116; *Vought* v. *Sober*, 73
Pa. St. 49.)

HENSHAW, J.—Appeals from the judgment and from
the order denying a new trial.

The action was brought to abate an alleged nuisance
maintained by defendants upon the lands of plaintiffs,
for an injunction, and for damages.

The nuisance consisted of a tailrace, sluiceway, cut
or ditch, by which the water, bearing detritus from de-
fendants' hydraulic mine, was carried across the land of
plaintiffs and discharged into the Trinity river.

This ditch had been used in connection with the
working of the Bartlett and Evans mine for many years
prior to and after the acquisition of a patent.   That
mine is the property of defendants, and a patent there-
for had been obtained in 1869.   The land of plaintiffs
crossed by this ditch is now known as the Barthol Jacob
Gold Placer mine.   But at the time of the construction
of the ditch, and for many years of its use thereafter,
plaintiffs' land was open, unappropriated, public min-
eral land of the United States.   Entry and payment for
the Barthol Jacob mine were made in October, 1887.
This action was commenced within five years from the
date of the issuance of the patent.

Defendants rely upon title by prescription, which was
pleaded, and, in this connection, proved continuous ad-

verse use under claim of right for more than five years
continuously after October, 1887.   They also rely upon
title under section 2339 of the Revised Statutes of the
United States, asserting that their right is one embraced
within the provisions of that section, and sanctioned by
the mining custom of the district.   This custom was not
pleaded, but the claim is made that evidence thereof is
admissible under the general issue.

The principal questions thus presented are: 1. Did
defendants acquire a right of way for the ditch by vir-
tue of the provisions of section 2339 of the Revised Stat-
utes of the United States?   2. Did they acquire a right
of way by prescription?

There are certain essentials to the practical conduct
of all hydraulic mining operations.   Water must be
obtained in quantities, and carried to the mining ground
under pressure sufficient to disintegrate and wash down
the natural bank.   For these purposes, in the mining
districts of this state, reservoirs, ditches, flumes, and
pipe-lines are indispensable.   The soil and gravel thus
eroded must be carried by gravity and the force of the
refluent water through cuts, sluiceways, and flumes,
where the gold, by reason of its greater specific gravity,
is deposited, caught, and gathered.   Lastly, by aid of the
same beneficent agent, the resulting waste matter, soil,
and gravel must be carried away through convenient
channels so as not to impede further operations.   The
water itself does not lose its utility to the miner nor
become an impediment to his work during any of these
processes.   Through them all it is not only of high util-
ity, but an absolute necessity.   It is, therefore, inaccu-
rate to call it waste or superfluous water, or to describe
the work which it does in carrying tailings as the drain-
age of a mine.   To drain land is to rid it of its super-
fluous moisture.   In the case of a quartz or drift mine,
drainage is an appropriate term when applied to the
means by which water which is in them, always super-
fluous and a hindrance to the work, is met and disposed
of.   But hydraulic mining is defined to be "mining by

means of the application of water under pressure through a nozzle, against a natural bank." (Civ. Code, sec. 1425.) Water here is not superfluous; it is of the essence of the work. It does not become superfluous even when it has aided in the extraction of the last particle of gold, since it still must serve the necessary purpose of clearing the ground for further operations.

These facts are of such general knowledge and undisputed acceptance, so inherent in the character of hydraulic mining, that they scarcely need the evidence of local custom, or any evidence at all, for their establishment. But in this case they were established by abundant and uncontradicted evidence, including that of the plaintiff himself. It was proved that the mine was situated in the Red Hill District; that it was in a region where hydraulic mining was customarily carried on, and that all hydraulic mines have and must have a tunnel, flume, or ditch, such as this, to carry away and dispose of the detritus. The plaintiff himself testified that "you can't operate a mine unless you have some such means."

The objection to the introduction of this evidence is disposed of by the case of *Colman* v. *Clements*, 23 Cal. 240. In support of title, evidence of mining rules and customs may be given without averring such rules and customs.

We are thus brought to the consideration whether the ditch in connection with its use vested in defendants a right to its continued use and enjoyment under section 2339, of the Revised Statutes of the United States, or, in other words, did title to the Barthol Jacob mine pass from the government to plaintiffs subject to defendants' rights in the ditch? This question we think must be answered in the affirmative. Section 2338, it is true, excludes easements for working mines, drainage, etc., from the purview of the act, leaving these matters for state regulation. But by section 2339 are protected to the fullest extent all the rights and easements enumerated in that section and in section 2340. "Whenever . . . .

rights to the use of water for mining . . . . purposes
have vested and accrued, and the same are recognized
and acknowledged by the local customs, laws, and de-
cisions of the courts, the possessors and owners of such
vested rights shall be maintained and protected in the
same; and the right of way for the construction of
ditches . . . . for the purposes herein specified is ac-
knowledged and confirmed."

There is here a recognition of rights to the use of
water for mining purposes, and of rights for the con-
struction of ditches for such purposes. As has been
said, the use of water for the purpose of carrying off the
tailings, and the construction of the ditch to aid therein,
are as essential to the successful conduct of hydraulic
mining as is the first use to which the water is put in
washing down the natural bank. Every use of water
for purposes of legitimate mining, sanctioned by local
custom and law, is recognized as a right and protected
as such, and within the protection is embraced the ditch
by which the use is made practicable. It does not de-
feat the conclusion to say that a flume might have been
substituted for a ditch. For it is shown that a ditch is
the usual and customary means employed. By section
2339 the right of way for the construction of ditches,
by which water is used for mining purposes is recog-
nized and confirmed. It must be apparent that the use
of water in such a ditch is an essential feature of hy-
draulic mining, and for that reason should not be con-
founded with the discharge of superfluous water which
is encountered in quartz and drift mines. The lat-
ter is always superfluous, always a hindrance. It never
serves a useful purpose. It is an accident and detri-
ment to the operation of the mine. It is disposed
of by pumps and drainage tunnels, and that disposi-
tion frequently involves enormous expense and loss.
Not infrequently such a mine cannot be kept free
from water at a cost which will justify further opera-
tions, and the result is that the mine is shut down
and abandoned. Thus water plays no part in the legiti-

mate and ordinary working of such mines.   Its appearance is both an accident and a misfortune.   It is an easement for the accidental requirement of drainage of such a mine that is contemplated by section 2338.   But, in the hydraulic mine, water must be present and must be used for the enumerated purposes, or work cannot proceed.   And it can only follow that if Congress, in protecting and conferring rights to the use of water and rights of way for ditches for mining purposes, did not include such ditches as this, then hydraulic mining, as universally understood and conducted in this state, is without the purview of section 2339.

Nor has the question thus presented any features in common with the propositions determined in *People* v. *Gold Run etc. Min. Co.*, 66 Cal. 138, 56 Am. Rep. 80, and the *North Bloomfield case*, 9 Saw. 531.   In *People* v. *Gold Run etc. Min. Co.*, *supra*, the question determined was the right to dump hydraulic debris into the principal navigable river of the state, " to the endangerment of habitations and the cultivation of large tracts of country, upon which are cities, towns, and villages, and to the impairment of the navigation of the Sacramento river."

In the *North Bloomfield case*, *supra*, the same questions were presented as to the effect upon habitations, riparian lands, and the navigability of the Feather, Yuba, and Sacramento rivers.

But in the case at bar no question is raised as to the disposition of the debris.   Plaintiffs do not complain of any deposit of debris upon their land, but object to the transportation of the debris by ditch across it.

The ditch and its use are a part of the recognized system by which hydraulic mining is and always has been conducted in this state, and, as is said by the supreme court of the United States in *Jennison* v. *Kirk*, 98 U. S. 453, by the act of which section 2339 is a part, Congress " proposed no new system, but sanctioned, regulated, and confirmed a system *already established, to which* the people were attached."

It is concluded upon this question that the title to

the Barthol Jacob mine passed to plaintiffs under the patent subject to the easement of the right of way for this ditch under section 2339 of the Revised Statutes of the United States. Any consideration of title by pre-scription thus becomes unnecessary.

The court erred in striking from plaintiffs' complaint the plea of estoppel by judgment. Upon the face of the pleading an estoppel was set out, and, as plaintiffs relied upon that estoppel as one of the foundations for their claim of title, it was proper that they should plead it. But the error was without injury. Upon the trial plain-tiffs offered in evidence the judgment-roll in the case. It appeared that when Jacob made application for his patent, Evans, the predecessor of defendants, commenced the action in question, opposing the application, so far as it affected a strip of land sixty feet in width, embrac-ing the ditch in question. A motion for a nonsuit in that case was made and granted. The ground upon which it was granted does not appear. But among the grounds urged were, " that the evidence shows that the plaintiff merely has an easement over the lands of de-fendant," and, " that under sections 2339 and 2340 of the Revised Statutes of the United States, all rights of plaintiff, if he has any, are fully protected, and that he has not shown any right to purchase the fee of said lands from the United States." The judgment of non-suit so granted could not raise an estoppel against de-fendants in this action, where they are asserting that very easement.

It is unquestionably the law that an easement must be used in such a manner as to impose as slight a bur-den and damage upon the servient tenement as practi-cable. It is but the application of the familiar maxim, *sic utere tuo, ut alienum non lædas.* In this case appel-lants claim a right to an injunction restraining defend-ants from an improper and injurious exercise of their easement. While defendants have a right to operate their ditch, they have no right so to operate it as to render it a nuisance to or destructive of the servient

tenement. But the court found " that the running of tailings through said tailrace or sluice ditch in the ordinary course of mining caused a small portion of the Barthol Jacob Gold Placer mine, along the side of said tailrace or sluice ditch, to cave down and wash away, and said tailrace to cut down further into the bedrock, but no material or appreciable injury or damage was thereby caused or done to the plaintiffs, or either of them, or to any part of their said mining property; nor is any damage or injury threatened thereby."

Under the rule *de minimis*, there is here no showing which would entitle appellants to the injunction sought.

The judgment and order appealed from are affirmed.

- McFARLAND, J., and TEMPLE, J., concurred.

Hearing in Bank denied.