[L. A. No. 4443.   In Bank.—August 11, 1919,]

## EDGAR M. FROST, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

[1] PUBLIC NUISANCE—INJUNCTION—SPECIAL INJURY.—To entitle a private person to sue to enjoin a public nuisance, he must allege and prove facts showing that it causes special injury to himself in person or property, and of a character different in kind from that suffered by the general public.

[2] SANITARY WATER ACT—FURNISHING WATER FOR DOMESTIC USE—PERMIT OF STATE BOARD OF HEALTH—INJUNCTION BY CONSUMER—CONSTITUTIONAL LAW—UNREASONABLE EXERCISE OF POLICE POWER. The act of the legislature (Stats. 1913, p. 793), requiring every person or corporation engaged in furnishing water for human consumption and having over two hundred and fifty service connections to apply to the state board of health for permission to continue the service, and making it the duty of the board, after investigation, to grant the permit if it determines that the water being furnished is the purest and most healthful obtainable or securable under all the circumstances and conditions, and further providing that the furnishing of water without such a permit is a public nuisance which any consumer may bring an action to abate, is unconstitutional, in so far as it provides for an injunction, because it authorizes an unreasonable exercise of the police power of the state.

[3] POLICE POWER—LEGISLATURE—LIMITATION.—The legislature is possessed of the entire police power of the state, except as its power is limited by the provisions of the constitution, but it cannot, under the guise of the police power, unreasonably interfere with a lawful and useful occupation or business which is not inherently, or because of the manner in which it is carried on, injurious to persons or property, or to the public health, convenience, comfort, safety, or morals.

[4] WATER AND WATER RIGHTS—FURNISHING WATER FOR DOMESTIC USE—LAWFUL BUSINESS—UNREASONABLE RESTRICTION.—The business of furnishing water for domestic use is a lawful one, and to say that a person who is engaged in furnishing such water shall immediately cease doing so, although the water he is furnishing is healthful and safe, until he shall have procured some better quality of water which it is possible for him to obtain, is an unreasonable restriction upon a lawful occupation, and it is a case in which the restriction has no relation whatever to the preservation of the public health, comfort, or convenience.

[5] SANITARY WATER ACT—AMENDMENT—EFFECT NOT RETROACTIVE.—
The amendment of 1915 to the statute of 1913, eliminating the
clause providing that no permit shall be granted unless the water
being furnished was the purest and most healthful obtainable
under the circumstances and conditions, had no retroactive effect
upon a judgment rendered in an action for an injunction before
such amendment was enacted.

[6] ID.—UNCONSTITUTIONAL PROVISION NOT SEVERABLE.—The clause in
the act of 1913 providing that no permit shall be granted unless
the water being furnished was the purest and most healthful ob-
tainable under all the circumstances and conditions, cannot be
eliminated without destroying the entire section, since to direct that
an injunction should issue under such circumstances because by
eliminating a material portion of the law it could be made valid,
would be in the nature of judicial legislation of a retroactive
character.

[7] ID.—PRIMARY OBJECT OF ACT OF 1913.—The primary object of the
act of 1913 was to prevent the supplying of water for human use
which was unhealthful and unsanitary, and thereby to preserve
and protect the general health of the people of the state, and the
power to grant or refuse a permit was given to the state board of
health solely with the object of preventing the use of water detri-
mental to health, and where the water is wholesome, sanitary, and
fit for human consumption, an action for an injunction is without
foundation.

[8] INJUNCTION — RESTRAINING OF NUISANCE — RULE.—When an in-
junction to restrain a nuisance will produce great public or private
mischief, a court of equity is not bound to grant it merely for the
purpose of protecting a technical unsubstantial right.  The court
may properly be guided by the consideration of the relative con-
venience of the parties; and if it appears that the benefit resulting
to the plaintiff from the granting of the writ will be slight as
compared to the injury to the defendant, the relief may be denied
and the plaintiff left to the pursuit of his remedy at law.

APPEAL from a judgment of the Superior Court of Los
Angeles County.  Lewis R. Works, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Ingle Carpenter and Charles W. Fourl for Appellant.

Albert Lee Stephens, City Attorney, Wm. B. Mathews and
W. B. Himrod for Respondents.

SHAW, J.—This is an action to enjoin the city of Los Angeles and certain officers constituting its board of public service from continuing to supply water from the Los Angeles aqueduct to its inhabitants for domestic uses. The court, after an elaborate trial, gave findings and judgment for the defendants. The plaintiff appeals.

The complaint sets forth that the city has constructed an aqueduct whereby it carries water from the Owens River, in the counties of Mono and Inyo, for a distance of two hundred miles to Los Angeles, and there distributes the same for domestic use to its inhabitants, including the plaintiff and his family; that said water is polluted and unfit for human consumption and that the city is so furnishing it without having obtained any permit to do so from the board of health of the state of California. The claim of the plaintiff is twofold. First, that the supplying of unfit water, such as that described, for domestic use, is *per se* a public nuisance, and, second, that the city is without authority to furnish any kind of water for public use unless it has first obtained a permit from the state board of health. For the latter point plaintiff relies on the statute providing that the continuation of such supply may be enjoined at the suit of any person who receives water of that character for domestic use from the person sought to be enjoined. (Stats. 1913, p. 793.)

The court expressly found that the water furnished and supplied by the city through its aqueduct and distributing system "is safe, wholesome, sanitary, healthful, potable, and fit for human consumption," and, further, that the city was not supplying to the plaintiff for domestic or other uses any water that was not fit for human consumption. These findings are fully supported by the great preponderance of the evidence. Indeed, it may be said that the evidence to the contrary is so inconsiderable that there is no serious conflict.

In view of these findings it is clear that the court was justified in refusing to grant any relief based upon the theory that the plaintiff as a private individual was maintaining an action to abate or enjoin a condition which constituted a public nuisance. "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." (Civ. Code, sec. 3493.) **[1]** To entitle a party to sue to enjoin a public nuisance he must allege and prove facts showing that it causes special injury to him-

self in person or property, and of a character different in kind from that suffered by the general ' public. (*Brown v. Rea*, 150 Cal. 174, [88 Pac. 713] ; *City Store v. San Jose etc. Co.*, 150 Cal. 279, [88 Pac. 977] ; *Spring Valley W. W. v. Fifield*, 136 Cal. 15, [68 Pac. 108] ; Code Civ. Proc., sec. 731 .)   Since the plaintiff is not injured at all, either specially or otherwise, he cannot under the general law maintain any action with respect to the continuance of the water service.   Further, in that aspect the case is entirely without merit, since the thing complained of, the supplying of water unfit for public use, does not exist.

The only foundation upon which the plaintiff can sustain his action is found in the act of 1913, aforesaid.   This act makes it unlawful for any person or corporation, private or municipal, to furnish water to any person, for domestic uses, "which is polluted or dangerous to health."   It requires any person or corporation desiring to furnish water for domestic use, or, being already engaged in that business, who desires to continue so doing, to apply to the state board of health for permission to do so; directs that an investigation of the plant and water supply may be made and that hearings may be had at the expense of the petitioner, whereupon if the board finds that the water to be furnished is of a character which does not endanger the lives or health of human beings, and that it is, under all the circumstances and conditions, the purest and most healthful water obtainable or securable, it shall grant permission for such applicant to furnish, or continue to furnish, such water.   The clause upon which the right of the plaintiff to maintain this action depends is, in effect, that any person or corporation whose supply of water for human consumption or domestic use is taken or received from any person or corporation, municipal or private, engaged in such water furnishing business without having an unrevoked permit to do so as provided in the act, may maintain an action to enjoin such water furnishing person or corporation from furnishing or continuing to furnish water for such purposes, or that it or he may be enjoined at the suit of the state board of health in the same manner.

The respondent contends that this act is unconstitutional so far as it applies to Los Angeles, and also that it is unconstitutional on general grounds as an unreasonable exercise of the police power.

With respect to the first proposition it is argued that any municipal corporation is authorized by the constitution to establish and operate public works for supplying its inhabitants with water (article XI, section 19) ; that the Los Angeles charter confers upon that city the power to make all regulations necessary and expedient for the preservation of health and prevention of disease within the city and to establish a health department with power to enforce such regulations; also to establish and operate waterworks for the purpose of supplying its inhabitants with water, and, in short, with full powers over the entire water system pertaining to that city; and that the subject of providing and furnishing water by the city for its inhabitants is a municipal affair with respect to which the charter is the exclusive law. In this behalf attention is called to the fact that by an amendment of the charter approved on January 16, 1917, adopted under the provisions of sections 6 and 8 of article XI of the constitution as amended in 1914, the city has become entirely independent of the state with respect to its municipal affairs, so that a general law is of no force therein, as to such affairs, whether the charter of the city contains provisions regarding it or not. (*Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441, [166 Pac. 351].) The claim is that the supplying of water to the inhabitants of the city of Los Angeles is a municipal affair and, therefore, a matter in which the legislature cannot interfere, even for the purpose of protecting the health of the inhabitants of other portions of the state. It is also claimed that the provision is in violation of section 13, article XI, of the constitution, which prohibits the legislature from delegating to any special commission power to perform any municipal function, and that it is likewise void as a delegation of legislative power to the state board of health. These several contentions would open an interesting field of inquiry, but because of our views upon another objection about to be mentioned, we do not think it necessary to determine whether they are well taken or not.

[2] We are of the opinion that the statute of 1913, so far as it provides for the injunction aforesaid, is unconstitutional because it authorizes an unreasonable exercise of the police power of the state. It provides that every person, private corporation, or municipality engaged in furnishing water for human consumption and having over 250 service connections,

shall apply to the state board of health for permission to continue the service; that if the board is, for any cause, unable to proceed at once, it shall issue a temporary permit, which shall be good until its final action, and that it shall make a thorough investigation of all the conditions and circumstances, and may allow the applicant to be heard. At the close of the investigation the board must determine the matter, and if it "shall determine, as a fact, that the water being furnished or supplied to such human beings is such, that under all the circumstances it does not endanger the lives or health of human beings *and that under all the circumstances and conditions the water being supplied is the purest and most healthful obtainable or securable under all the circumstances and conditions (sic)* it shall grant to petitioner a permit authorizing the petitioner to furnish or continue to furnish or supply such water to such human beings." (Section 2, subdivision 6.)   It further declares that the furnishing of water without such a permit is a public nuisance and that it is the duty of the officers of the state to immediately abate the same in the manner provided by law.   Subdivision (a) of section 2 requires the board of health to refuse a permit if it determines that the water being supplied may constitute a menace or danger to health or is unhealthful or unsanitary, and no power is given to the board to issue a permanent permit at all, except after it has determined that the water being supplied is the purest and most healthful obtainable under the circumstances.

The act gives the board no discretion.   No matter how pure and healthful, short of absolute perfection, the water supply may be, nevertheless, if better water can be obtained by any expenditure of money and effort of which the purveyor to the public use is capable, the permit must be refused; the board has no power to grant any permission; the continuance of the water service at once becomes a public nuisance; it is the bounden duty of the proper state officials to immediately stop it, and any consumer forthwith is invested with the right and power to maintain an action to enjoin the continuance of such water service.

It seems obvious from the mere statement of the case that such a law, at least so far as it applies to a water service already in operation, must be held to be unreasonable and

invalid. The climate of this state is so arid, the rainfall so light and variable, and the intervals of drought so long, that the denizens of practically every community, from a village having 250 service connections up to the largest city, have and can have no private water supply, but are compelled to depend upon some kind of public water service. It is safe to say that in the majority of such places the water served is not detrimental to the health of the inhabitants. There can be little doubt that in a large number of such cases it would be possible for those engaged in the public water service to find, somewhere available, water of a better quality than that which is being supplied. If, such fact could be established, and even if it could not be shown that better water was not obtainable, then, under this law, no permit to continue the original service could be issued by the board and any consumer could at once enjoin the further service and immediately deprive himself and all other inhabitants of the region of any water from that source until the better quality of water was secured and delivered to them. In the practical result the inhabitants would be deprived of any water at all in all such cases. Apparently this part of the law is based on the theory that it is better for the urban population of the state that they should die of thirst than that they should quench it with ordinary healthful water, which is not the very purest that can possibly be obtained. The law, in this respect, amounts to absolute prohibition of a business, lawful in itself, and not injurious to health.

[3] The legislature is possessed of the entire police power of the state, except as its power is limited by the provisions of the constitution. But it cannot, under the guise of the police power, unreasonably interfere with a lawful and useful occupation or business which is not inherently, or because of the manner in which it is carried on, injurious to persons or property, or to the public health, convenience, comfort, safety, or morals. (*Ex parte Whitwell*, 98 Cal. 73, 81, [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 870] ; *Ex parte Sing Lee*, 96 Cal. 354, [31 Am. St. Rep. 218, 24 L. R. A. 195, 31 Pac. 245] ; *Los Angeles* v. *Hollywood Cem. Assn.*, 124 Cal. 349, [71 Am. St. Rep. 75, 57 Pac. 153] ; *Ex parte McCapes,* 157 Cal. 29, [106 Pac. 229] ; *In re Dart,* 172 Cal. 59, [Ann. Cas. 1917D, 1122, L. R. A. 1916D, 905, 155 Pac. 63].) A statement of the pre-

cise points decided in some of these decisions will show the
practical application of the rule.   In *Ex parte Whitwell,* an
ordinance forbidding any person to maintain a hospital for
insane persons in any building not constructed of brick, iron,
or stone, or in any building not surrounded by a high brick
or stone wall, or within four hundred yards of any dwelling
or school, was held to be an unreasonable exercise of the police
power.   It was said that the restrictions had no reasonable
relation to the object of protecting the public interest or the
safety, convenience, or comfort of the persons concerned.   In
the Sing Lee case it was declared that an ordinance prohibit-
ing the carrying on of a public laundry in a town, except in
certain specified blocks thereof, without a written permit from
the trustees, was void.   In *Los Angeles* v. *Hollywood,* an ordi-
nance prohibiting the establishing of cemeteries within the
limits of a county without the permission of the board of
supervisors was held void.    In the McCapes case it was held that
a statute prohibiting any person from building a fire on his own
land for burning brush or any other purpose without a writ-
ten permit from some state or district fire warden was an unrea-
sonable restriction upon the right to use property.   **[4]** The
business of furnishing water for the domestic use of inhabi-
tants of any particular territory is a lawful one.   To say that
a person who is engaged in furnishing such water shall imme-
diately cease doing so, although the water he is furnishing
is healthful and safe, until he shall have procured some better
quality of water which it is possible for him to obtain, is an
unreasonable restriction upon a lawful occupation, and it is
a case in which the restriction has no relation whatever to the
preservation of the public health, comfort, or convenience,
which is obviously the object to which the statute is directed;
but, on the contrary, its enforcement would cause far more
inconvenience and distress to persons and injury to the public
interest, than the thing at which it was aimed.   Upon the
principles we have just discussed this feature of the law is
clearly void.

**[5]** The subsequent policy of the legislature indicates that
it was of the opinion that this particular prohibition of the
law was invalid.   The legislature of 1915 amended the law
[Stats. 1915, p. 1282] by eliminating the clause providing that
no permit shall be granted unless the water being furnished

was the purest and most healthful obtainable under the circumstances and conditions.    To the suggestion that the amendment of the law would affect the action pending so as to allow an injunction which otherwise should have been refused, the answer is that amendments to the law do not operate upon an existing suit in a case like the present, nor have retroactive effect so as to affect the validity of a judgment rendered before the new law came into existence.    (*Vanderbilt* v. *All Persons,* 163 Cal. 513, [126 Pac. 158]; *Ex parte Sparks,* 120 Cal. 400, [52 Pac. 715].)    The judgment appealed from was rendered before the amendment of 1915 was enacted.

[6]    The appellant answers the objections to this clause of the law by the suggestion that if it should be found unconstitutional, that clause can be eliminated without destroying the entire section and that without it the statute is valid and enforceable.    This point is without merit.    It cannot be supposed that the state board would issue a permit in the face of such an imperative mandate against it or that any municipality or person in the state would expect to be able to obtain a permit from a state board which was forbidden to issue it under the circumstances existing.    To direct that an injunction should issue under such circumstances because by eliminating a material portion of the law it could be made valid would be in the nature of judicial legislation of a retroactive character.

There is another reason which fully justifies the affirmance of the judgment.    We have said that a private person cannot maintain an action to enjoin a public nuisance unless it is specially injurious to himself.    The plaintiff in this case is taken out of the operation of this rule solely because of the permission given to him by the state in this act to maintain this action on its behalf, without showing special injury to himself.    The state may, of course, grant this permission to any citizen to act in its behalf.    But it must be presumed that the legislature did not intend to change in any other respect the principles of equity regarding injunctions, and consequently that when a citizen applies to a court of equity for relief, under such authority, his rights are no greater with respect to the merits of the case and the duty of a court of equity to grant relief, than in any other action of equitable cognizance. The general principles of equity governing the issuance of in-

junctions in such a case must be the same and like reasons must be shown as in other cases of the same character. [7] The primary object of the act of 1913, under which the plaintiff sues on behalf of the state, was to prevent the supplying of water for human use which was unhealthful and unsanitary and thereby to preserve and protect the general health of the people of the state. The power to grant or refuse a permit was given to the state board of health solely with the object of preventing the use of water detrimental to health. The substance of any action to enjoin such supply must therefore be the prevention of the use of water which is dangerous to health. As we have already shown, the plaintiff wholly failed to prove such a case. The water which is the subject of this controversy is found by the court upon evidence which is full and satisfactory, to be safe, wholesome, sanitary, and fit for human consumption. So far as the substantial merits of the action is concerned, it is wholly without foundation. The plaintiff is driven to rest exclusively upon his technical right under the act to enjoin the continuance of the water supply, simply because the state has issued no permit therefor. The established fact is that there is no occasion for interference by the state or by any other person. The only right is the bare technical right to insist that a permit be obtained before the city delivers any more water to its inhabitants for human consumption. It is obvious, therefore, that the issuance of an injunction by the court to stop the city from supplying such water to its inhabitants would cause the greatest imaginable inconvenience both to the city and to its inhabitants, and would be of no benefit whatever to the plaintiff. The refusal of such injunction would deprive the plaintiff of no right beneficial to himself or others and would put him to no inconvenience whatever. Under these conditions a court of equity is not bound to grant an injunction. [8] ''When an injunction to restrain a nuisance will produce great public or private mischief, a court of equity is not bound to grant it merely for the purpose of protecting a technical unsubstantial right.'' (2 Beach on Injunctions, sec. 1067.) ''The court may properly be guided by the consideration of the relative convenience of the parties; and if it appears that the benefit resulting to the plaintiff from the granting of the writ will be slight as compared to the injury to the defendant, the

relief may be denied and the plaintiff left to the pursuit of his remedy at law.'' (2 High on Injunctions, sec. 740.) Further authorities are set forth in *Peterson* v. *Santa Rosa,* 119 Cal. 391, [51 Pac. 557]. See, also, *Jacobs* v. *Day,* 111 Cal. 571, [44 Pac. 243].

In this case the right of the plaintiff, such as it is, is wholly technical and unsubstantial, and to enforce it would produce very great mischief, both public and private, not only to himself, but to many of his fellow-citizens within the city, and to the municipality as well. The court in its discretion was fully authorized to deny the injunction under such circumstances.

The judgment is affirmed.

Olney, J., Wilbur, J., Lennon, J., Melvin, J., Angellotti., C. J., and Lawlor, J., concurred.