[Civ. No. 8848. Third Dist. Dec. 12, 1956.]

JULIUS PROTZ et al., Appellants, v. LEWIS E. REYNOLDS et al., Respondents.

Laughlin, McKalson & Crable and Robert E. Laughlin for Appellants.

Millington & Millington for Respondents.

SCHOTTKY, J.—Julius Protz, as owner, and John McFarland, as tenant, of 55 acres of land, commenced an action for an injunction and damages against Lewis E. Reynolds, his wife, Burniece, and their son, Jere, all of whom are owners of land adjoining that of the plaintiffs. Muller Lane, a public road approximately one-half mile in length, runs in a generally northerly and southerly direction from Watson Road on the north to the northerly line of the Protz property, and the southerly boundary line of the real property owned by defendants Reynolds as its southerly terminus. The lane is entirely bounded on the east by the properties of the Reynoldses and is also bounded on the west by properties owned by Jere Reynolds, for a portion of its course, from a point on its southerly terminus northerly approximately 700 feet to the northerly boundary of the land owned

by defendants Reynolds lying on the west side of said lane. The latter land is designated the Reynolds west 20 acres and the former land includes a corresponding Reynolds east 20 acres which is directly opposite on the east side of the lane. The remaining land which borders the lane on the west is occupied by one Raynor.

In 1947 Reynolds leveled the east 20. In 1949 he leveled the west 20. In leveling the west 20 he leveled it to drain from east to west. In order to irrigate this parcel he constructed a pad or mound of earth along the entire east end of the west 20 on the top of which he ran his irrigation ditch.

On April 28, 1950, Protz and McFarland filed this action against the Reynoldses, in which among other things they alleged (1) that in leveling the west 20, and in constructing the ditch pad along the east end of the west 20 the defendants had caused flooding of the lane by cutting off the natural drain which had theretofore run through the northeast corner of the west 20 (the plaintiffs claimed damages for the flooding of the lane, which was the only means of access to the Protz property, and sought an injunction to enjoin further damming of waters in the lane); (2) that in leveling the west 20 the defendants had filled in another natural drain which ran from a low spot around the Protz buildings northwesterly across the west 20 and across the northeast corner of the Reynolds far west 90 acres, through Gosselin's property and into the drain running under the Sutter-Butte Canal far to the west.

The defendants cross-complained, alleging (1) that in 1947 Protz had put in a fill on the east end of the Protz property which stopped a natural drain which ran along the east edge of the large parcel on the east of the lane belonging to the Reynoldses and which continued along the Protz easterly line, and down through Butte Farms to the south; and (2) that Protz had let his irrigation water escape from the southwest corner of his property onto the southerly part of the Reynolds far west 90 acres. Reynolds claimed damages against Protz and asked for an injunction in respect to the Protz irrigation water, and for damages and an injunction in respect to the damming of the natural drain on the east.

The court rendered judgment, (1) that plaintiff Protz be authorized to connect the low spot on Muller Lane with the Raynor drain at his own expense; (2) that plaintiff McFarland recover $300 damages from defendants Reynolds; (3) that plaintiff Protz open up the swale along the east

boundary of his property so that said swale would take care of the natural rainfall and surplus waters arising on the lands of defendants Reynolds; (4) that plaintiff Protz be enjoined from permitting his surplus irrigation and artificial waters to flow across the lands of defendants Reynolds; (5) that plaintiff Protz be authorized to connect the so-called pothole lying west of his barn with the drain of defendants Reynolds; (6) that plaintiff Protz have judgment for $300 against defendants Reynolds for damages caused by inconvenience in blocking off a portion of the drainage of said Muller Lane; (7) that defendants Reynolds have judgment against plaintiff Protz for $600 for damages to trees on the easterly portion of their land due to the filling in of the swale, and the further sum of $500 for damages to their lands lying westerly of the land of plaintiff Protz.

Plaintiffs Protz and McFarland have appealed from the judgment and attack the findings, contending that they are in many respects contradictory, inconsistent, ambiguous, and unsupported by the evidence. Appellants argue that if the court found that the defendants, in leveling the west 20 obstructed the drainage from the lane, and if the court found that this obstruction damaged the plaintiff Julius Protz, and that the defendants should be compelled to provide drainage in the future, then as a conclusion of law it would follow that Protz is entitled to an injunction compelling Reynolds to restore the drainage in such a manner as to carry the water off of the lane and enjoining Reynolds from further interference with the drainage. However, the finding of the court as to this issue was as follows:

"That it is true that there was drainage in a westerly direction from the lane over a portion of the lands of defendants, when the land was in its original, natural condition; that this original drainage was not adequate to flooding conditions, but did relieve such flooding conditions to a considerable extent; that the plaintiffs in leveling the west twenty-acre piece of their said land, did obstruct this drainage for three winter seasons until the summer of 1952, but that the defendants then provided an outlet for the drainage water from the ditch on the westerly side of the land into the Raynor ditch, and should be compelled to provide in the future for such outlet, through said Raynor ditch, but the maintenance of the said ditch on the westerly side of said lane, and the connection there with the Raynor drainage ditch should not be an obligation of the defendants. That

the Winter season of 1949-50, 1950-51, and 1951-52, were exceptionally wet years, and, had the original natural drainage been in existence, there would still have been flooding of the said road for considerable periods of time; that the damage claimed by the plaintiff in this connection are out of all proportion to the facts of the case, and that the plaintiffs were not damaged in their business and use of their property, except to a minor extent amounting to inconvenience, by the actions of the defendants, and that the plaintiffs should be allowed no more than nominal damages for said inconvenience."

 The record supports this finding and the conclusion of the trial judge, who viewed the properties involved, that the drainage provided by the defendants through the Raynor ditch was an improvement over the previously existing situation and did not damage plaintiffs. It must be borne in mind that this was an equitable proceeding and that in such an action the mere technical invasion of a right does not compel the issuance of an injunction where in the judgment of the chancellor it is not necessary to protect that right. As was stated in the case of *Wright* v. *Best*, 19 Cal.2d 368, at page 386 [121 P.2d 702]:

". . . Despite a proper showing in other respects of a right to injunctive aid, if a plaintiff is merely seeking to protect a technical and unsubstantial right, and the issuance of the injunction will bring no actual advantage, it may be properly refused where to do otherwise would result in unusual hardship to the defendant or the public."

And as stated in *Clough* v. *W. H. Healy Co.*, 53 Cal.App. 397, at page 400 [200 P. 378]:

". . . Mandatory injunctions have been awarded directing that a closed or obstructed way be cleared and opened for the owner; but it is not in every case of a permanent obstruction that such relief will be granted. Each case is determined according to the particular circumstances; and it rests in the sound discretion of the court whether or not a mandatory injunction will issue. To entitle the complainant to equitable relief the right must be clear, and an injunction of the character here in question will be denied where the obstruction does not constitute a material interference with the right of the owner of the easement, or where the damage sustained by him is merely nominal."

Also applicable to the instant case is the following state-

ment from *Frost* v. *City of Los Angeles*, 181 Cal. 22, at page 32 [183 P. 342, 6 A.L.R. 468]:

"In this case the right of the plaintiff, such as it is, is wholly technical and unsubstantial, and to enforce it would produce very great mischief, both public and private, not only to himself, but to many of his fellow-citizens within the city, and to the municipality as well. The court in its discretion was fully authorized to deny the injunction under such circumstances."

With the foregoing well settled principle in mind and in view of the situation as shown by the record in this case we are unable to agree with appellants that they were entitled to an injunction restoring the drainage to its former condition.

Appellants also argue that the findings are inconsistent in that, whereas, on one hand the court found that in leveling the west 20 the defendants did obstruct drainage from the lane, on the other hand the court found: "That it is not true that in the leveling of said lands by defendants that the defendants caused the surface of the lands of defendants immediately adjacent to said lane on the easterly side thereof, to be elevated approximately one to two and one-half feet above the traveled surface of said lane, or that any act of these defendants caused said lane to become a receptacle for the collection of surface waters and/or storm waters, caused by rainfall falling on the lands of the defendants adjacent to the Easterly side of said lane, but on the contrary it is true that the defendant hauled dirt and gravel into said lane and raised the surface elevation of said lane at all low points, and that the relation of elevation of the lands of defendants to said lane, was such that after the filling by the defendants of dirt and gravel that the lane was raised to a higher point than it had been previously, and that said lane at the point where said culvert existed was raised to such a degree that it became higher than the surrounding land." Appellants also contend that the finding that the defendants raised the surface elevation of the lane where it became higher than the surrounding land is against the evidence in that the exhibits show otherwise. Further, appellants contend, a finding that no act of the defendants caused the land to become a receptacle for the collection of surface waters and/or storm waters is indisputably denied by the exhibits. Apellants allege further inconsistencies in Finding X in that the court found that the defendants did nothing

wrongful in leveling their lands, but in the same sentence found that the defendants did interfere with natural drainage, that the court found that the defendants interfered with natural drainage and then found that "there were no complete natural drains or watercourses on said westerly portion of said defendants' lands," and that the court found that the defendants did not cause the land on the westerly side to be raised over the surface of the lane, which is shown by the evidence to be to the contrary.

However, a reading of the findings attacked by the appellants, and particularly Finding X, fails to support the construction placed upon it by appellants. Finding X reads in part: ". . . it is not true that the land on the westerly side of said lane was caused by defendants to become a levy or that any act of theirs prevented surface and/or storm waters caused by natural flowing into said lane from the lands of defendants or otherwise to flow in a westerly direction, excepting that the leveling of said land did prevent the flowing of excessive waters that fell in times of heavy precipitation from flowing westward, but did no interference with normal precipitations or the drainage of said lane from such normal precipitation; that no act of defendants caused said lane to become a receptacle for the collection of surface waters, without drainage, but only prevented the drainage of large amounts of water in a period of excessive rainfall. . . ." On the same page, the court further found that by reason of the leveling of the lands to the west it was true that in times of abnormal precipitation in December, 1949, and January, 1950, water did become impounded on said lane, and the court further found the lane was not impassable to vehicular traffic, but rather found that the plaintiffs were merely inconvenienced for a brief period of time during that one season for which the court awarded $300 to each plaintiff. The court further stated in Finding XV that: ". . . a portion of the water that fell on said lane during periods of extreme precipitation was delayed in running off," and goes on to find: ". . . but that said matter of drainage of said road has now been entirely corrected by the construction of the so-called Raynor drain. . . ."

In support of the findings the record shows that several witnesses testified that the condition of the lane was better since Reynolds worked on it and there were only the normal puddles that followed a heavy rain. There was also testimony

of Jere Reynolds, one of the respondents, that he built a drain that connected the Toe ditch on the side of the road to the Raynor drain and that the drainage now on the road is better than ever before. He further testified that there was no natural drainage to the west from the road. A former owner, Henry Muller, also testified that there was no drainage to the west. Ed Raynor testified that there was a culvert on the road that drains the water from the road into the Raynor drain. He also testified that there was no objection to draining the road water into the drain which first crosses Reynolds' land to the final outlet. He further stated that the drain which flows over his land and Reynolds' land was there for anyone's use.

Appellants contend also that upon the issue of the flooding around the Protz buildings the findings are contradictory and unsupported by the evidence and that the conclusions of law are not correctly drawn from the findings. Finding II on the fourth cause of action finds that there was no such natural drain running from the low spot around the Protz buildings across the west 20 and that in the leveling of the west 20 no natural drain was interfered with and no surface waters and/or storm waters caused by rainfall on the Protz land flowed over and/or across the west 20, "but it is true that there were a series of potholes," that in times of excessive rainfall some of the rainfall passed over the top of the barriers between potholes, and to some extent took off natural waters. Appellants complain that although the finding recognizes that the leveling blocked off drainage from this area when there were "sufficiently heavy rains" the court, in the same paragraph finds "That it is not true that the leveling of said lands by defendants has been and/or is a nuisance . . ." and appellants submit that as a matter of law, the blocking off of natural drainage to the injury of another constitutes a nuisance, and thus that appellants are entitled to an injunction requiring Reynolds to correct the situation, not merely the following judgment: ". . . that . . . Protz . . . is . . . authorized to connect the so-called pothole lying west of his said barn, with the drain of the defendants . . . at the cost and expense of the plaintiff. . . ." Appellants further contend that the finding as to the nonexistence of a drain from the low spot west of the Protz buildings across the west 20 prior to the leveling is wholly against the evidence as shown by the exhibits.

However, a reading of the finding attacked by appellants

fails to support the construction placed upon it by the appellants. The court found that the pothole had *no* drainage except when excessive rainfall overflowed its banks. It would thus seem that appellants were given more than they were entitled to when the court authorized Protz to connect this pothole with the drain over the Reynolds land, but respondents agree to take this drainage.

There was also testimony of Henry Muller, Jere Reynolds, Walter Gosselin and Ed Raynor to the effect that the pothole back of the Protz house was always under water after a rain and that there was no natural drainage to the west. It would appear, therefore, that appellants' claimed exhibits to the contrary at most merely raise a conflict in the evidence which has been decided in respondents' favor upon sufficient evidence.

Appellants attack other findings, but as in the case of the findings hereinbefore discussed there is ample support in the record for such findings. Appellants have ably marshalled the evidence in support of their contentions but have failed to give due consideration to the evidence in conflict therewith.

Appellants contend also that the court erred in excluding evidence of the changes made in the lands below the Protz land when the court did not require Jere Reynolds to answer the question: "Q. Do you know if the land that lies on down south of Butte Farms has a slough through them so water will drain from your father's property here. . . ." However, the record shows that Jere Reynolds had already answered that question just previously. "Q. Now do you know, Mr. Reynolds, what would have happened if Protz took this fill out here as far as water collecting on the Butte Farms and Protz's land along in here is concerned, do you know what would happen to it? A. Sure, it would run right out. Q. It would run right on out? A. Sure, you go down to Butte Farms, they leveled it a few years back, you go down there today and they know what happened up here, and they keep it cut down—they dug a deeper drain and that water has to go on, and the people down below here opened a drain there too, and it goes on down here, almost the original depth of that slough (indicating)."

No other contentions made require discussion.

A careful reading of the record convinces us that the trial court as a court of equity was faced with the difficult problem of working out a solution of the various problems presented by the pleadings in the instant case, and that the

court endeavored to and did render a judgment that is not only amply supported by the evidence and the law, but is a judgment that is in the best interest of all parties to the action.

We are satisfied that the amount of damages awarded appellants is adequate to compensate them for any damage they may have sustained by reason of the acts of respondents and that the judgment of the court provides for an improved method for the drainage of the lane and also of the lands of the parties. To hold that appellants are entitled to an injunction under such circumstances would be unrealistic and contrary to the principles of equity.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied January 8, 1957, and appellants' petition for a hearing by the Supreme Court was denied February 6, 1957.