[Civ. No. 56550. Second Dist., Div. Two. Feb. 25, 1980.]

DON BROWN et al., Plaintiffs and Appellants, v.
PETROLANE, INC., Defendant and Respondent.

COUNSEL

Gottlieb, Gottlieb & Stein, Arthur J. Gottlieb and Stuart M. Rice for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Theodore B. Olson, Charles C. Ivie, Michael G. Yoder and William E. Linsenbard for Defendant and Respondent.

OPINION

ROTH, P. J.—Appellants filed their action against respondent Petro-lane, Inc. and other unnamed defendants on November 3, 1978, claiming that the maintenance and continued operation by Petrolane of its liquefied petroleum gas (LPG) facilities[1] within 2,000 feet of appel-

---

[1] Appellants also sought to restrain the unloading in Los Angeles harbor of 11 million gallons of LPG destined for Petrolane's storage tanks by the ship *Cavendish*. That as-

lants' homes constituted a nuisance, both public and private, and was in violation of certain of appellants' constitutional rights.

Petrolane's general demurrer was sustained without leave to amend. This appeal is from the order of dismissal entered January 2, 1979.

The following pertinent portions of appellants' complaint are of importance to our disposition herein:

"[First Cause of Action]

". . . . . . . . . . . . . . . .

"At all times mentioned herein, and since 1974, defendant has occupied, used, and maintained an LPG storage facility consisting of two storage tanks with a total capacity of 26 million gallons and a 6,000 foot pipeline from the wharf to the tanks.

"LPG is a highly volatile substance which can explode with enormous force known as a 'BLEVE' (boiling liquid expanding vapor explosions), and in the past years has been involved in some of the worst industrial accidents ever recorded.

"Defendant's facility is the largest above-ground LPG storage facility in the United States and is also located in the most densely populated area of any such facility in the Country.

"Defendant's facility contains an impoundment basin which would be incapable of holding the contents of the storage tanks in the event of an accident.

"Defendant's facility lies in an area of recurring seismic activity, most notably the Newport-Inglewood fault and the Palos Verdes fault. The facility was designed to withstand a maximum earthquake magnitude of 5.5 on the Richter Scale while recent tests indicate that the faults in this area are capable of generating a earthquake magnitude of 7.2 on the Richter Scale.

---

pect of the matter became moot after the unloading occurred.

Additionally, appellants alleged a breach of contract claim in a second cause of action but that cause was abandoned before the trial court and is not a subject on this review.

"The nearest home to defendant's facility is 1,000 feet away, there is a drive-in movie 500 feet away, the Taper Elementary School is located 2,000 feet away, and there are approximately 1,000 homes and four schools within a one mile radius of defendant's facility.

". . . . . . . . . . . . . . . . . . . . . . . .

"The occupation, use and maintenance of defendant's facility constitutes a permanent private nuisance within the meaning of Section 3479 of the Civil Code, in that it is offensive to the senses and interferes with the comfortable enjoyment of life and property of the plaintiffs.

". . . . . . . . . . . . . . . . . . . . . . . .

"Said nuisance affects, at the same time, a considerable number of persons in the San Pedro community so as to also constitute a public nuisance within the meaning of Section 3480 of the Civil Code.

". . . . . . . . . . . . . . . . . . . . . . . .

"[Third Cause of Action]

". . . . . . . . . . . . . . . . . . . . . . . .

"Defendant's facility was installed and is operated without the consent of the people living in the vicinity thus denying them due process of law required by Amendment XIV of the United States Constitution.

". . . . . . . . . . . . . . . . . . . . . . . .

"Plaintiffs' fundamental Constitutional rights guaranteed to them by Amendment XIV of the United States Constitution and Article I, Section 1 of the California Constitution includes the right to live in their homes safe from excessive dangers which precludes the siting of unusually hazardous facilities in a highly populated area.

"Defendant's facilities and operation exposes the plaintiffs to excessive danger thus denying them equal protection of the laws.

"Exposing its citizenry to the excessive dangers associated with LPG is against the public policy of the State of California."

Whether these allegations, accepted as true for the purpose, to the extent they constitute material and issuable facts, are such as to state a cause of action either for nuisance or on constitutional grounds, depends in the first instance on a proper understanding of the respective components of public and private nuisances and of the essential differences between them. In this respect both appellants and respondent place considerable reliance upon the reasoning articulated in *Venuto* v. *Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116 [99 Cal.Rptr. 350]. There four individual plaintiffs complained that Owens-Corning had used its Santa Clara fiberglas manufacturing plant in such fashion as to constitute a continuing public nuisance through emissions of waste matter which obstructed the public view of the hills surrounding Santa Clara Valley, injured the health of the citizens in the county, and threatened to destroy their comfortable enjoyment of life and property. The trial court sustained a general demurrer and its ruling was affirmed. In its discussion on the appeal the court observed: "In the instant case plaintiffs purport to plead a cause of action predicated upon the claim that defendant is conducting and maintaining a business which constitutes a public nuisance. Accordingly, they must allege sufficient facts to show that the operation of defendant's business constitutes a public nuisance. Civil Code section 3479, in pertinent part, defines a nuisance as 'Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property,...' A public nuisance is defined in Civil Code section 3480 as '...one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.'

"Within the meaning of these statutes plaintiffs have pleaded facts stating a *public* nuisance. In essence they plead the pollution of the air as a result of defendant's operation of its business has and is injuring the health of the citizens of Santa Clara County and is and has interfered with the comfortable enjoyment of the life and property of every person in the county.

"As observed by Prosser, the term 'public nuisance' comprehends an act or omission which interferes with the interests of the community or the comfort and convenience of the general public and includes interference with the public health, comfort and convenience. (Prosser on Torts (3d ed.) pp. 605-606.)

"...........

"The remedies against a public nuisance, i.e., the redress for the wrong to the community, are by indictment or information, a civil action, or abatement. (Civ. Code, § 3491.) Adverting specifically to the remedy by way of a civil action, since this is the remedy with which we are here concerned, we apprehend the law of this state to be that such action is ordinarily properly left to the appointed representative of the community and may be maintained by a private person *only* if the public nuisance is specially injurious to him. (Civ. Code, § 3493; see Code Civ. Proc., § 731; and see Prosser on Torts (3d ed.) at p. 608.) Section 3493 of the Civil Code specifically provides that 'A private person may maintain an action for a public nuisance, *if it is specially injurious to himself, but not otherwise.*' (Italics added.) The genesis of this rule is found in the common law which recognized that 'the action would lie if the plaintiff could show that he had suffered special damage over and above the ordinary damage caused to the public at large by the nuisance.' (Prosser on Torts (3d ed.) at p. 608.)

"In applying the rule articulated in section 3493 to a particular case, cognizance must be taken as to whether the public nuisance alleged is also a private nuisance, since this factor is important in determining how the statute is to be applied. The difference becomes important in view of the fundamental principle that a private nuisance is a civil wrong based on disturbance of rights in land while a public nuisance is not dependent upon a disturbance of rights in land but upon an interference with the rights of the community at large. (Posser on Torts (3d ed.) at p. 594.)

"Where the nuisance alleged is not also a private nuisance as to a private individual he does not have a cause of action on account of a public nuisance unless he alleges facts showing special injury to himself in person or property of a character different *in kind* from that suffered by the general public. (*Ward* v. *Oakley Co.*, 125 Cal.App.2d 840, 850 [271 P.2d 536]; *Donahue* v. *Stockton Gas etc. Co.*, 6 Cal.App. 276, 279-280 [92 P. 196]; *Wallace* v. *MacDonough Theater Co.*, 34 Cal. App. 498, 499 [168 P. 144]; *Voorheis* v. *Tidewater Southern Ry. Co.*, 41 Cal.App. 315, 320 [182 P. 797]; *Hitch* v. *Scholle*, 180 Cal. 467, 468-469 [181 P. 657]; *Frost* v. *City of Los Angeles*, 181 Cal. 22, 24 [183 P. 342, 6 A.L.R. 468]; *Brown* v. *Rea*, 150 Cal. 171, 174 [88 P. 713]; *Thompson* v. *Kraft Cheese Co.*, 210 Cal. 171, 178 [291

P. 204].) Under this rule the requirement is that the plaintiff's damage be different in kind, rather than in degree, from that shared by the general public. (*Voorheis* v. *Tidewater Southern Ry Co., supra; Brown* v. *Rea, supra; Donahue* v. *Stockton Gas etc. Co., supra;* see Prosser on Torts (3d ed.) at pp. 608-609.) Where, on the other hand, the nuisance is a private as well as a public one, there is no requirement that the plaintiff suffer damage different in kind from that suffered by the general public and he 'does not lose his rights as a landowner merely because others suffer damage of the same kind, or even of the same degree,...' (Prosser on Torts (3d ed.) p. 609; see *Johnson* v. *V. D. Reduction Co.,* 175 Cal. 63, 65-66 [164 P. 1119]; *Fisher* v. *Zumwalt,* 128 Cal. 493, 496 [61 P. 82]; *Lind* v. *City of San Luis Obispo,* 109 Cal. 340, 343-344 [42 P. 437]; *Willson* v. *Edwards,* 82 Cal.App. 564, 567-569 [256 P. 239].)

"In the present case the three plaintiffs predicating their claim of special damage upon personal injury have not alleged facts purporting to state a private nuisance. As Prosser points out, 'The essence of a private nuisance is an interference with the use and enjoyment of land' and '...without it, the fact of personal injury, or of interference with some purely personal right, is not enough for such a nuisance.' (Prosser on Torts (3d ed.) p. 611 and fn. 91 at p. 611; *Lind* v. *City of San Luis Obispo, supra,* 109 Cal. 340, 344.)...

"...In the instant case these plaintiffs merely allege that they are residents of Santa Clara County. They do not allege any interference with a known property right. Accordingly, their action must rise or fall with the determination whether they are entitled to bring an action based upon public nuisance upon the basis that the injury suffered by them is different in *kind* from that suffered by the general public." (*Id.,* at pp. 122-125.) (Italics in original.)

■ We perceive the essential elements present here such as to require the same result arrived at in *Venuto.* Thus, while appellants allege the fact of their fear occasioned by the presence of Petrolane's facility, that fear, to the extent it reasonably exists, must be common also to the general community of which they are a part and differs between individuals within that community, if at all, in degree rather than in kind. No other special damage to appellants having been alleged, the trial court's conclusion no cause of action for public nuisance was maintainable by appellants must be sustained. That is to say, whether or not the

essential elements of a public nuisance have been set out in appellants' pleading, a question we do not pass upon, it is yet the case they have not sufficiently alleged those facts necessary to place themselves in a position to abate or otherwise deal with it in their own or others' behalf.

Similarly, since appellants have alleged no perceptible injury to their individual property interests apart from that associated with the community at large, neither has a cause of action for private nuisance been described. (See *Buchanan* v. *Los Angeles County Flood Control Dist.* (1976) 56 Cal.App.3d 757 [128 Cal.Rptr. 770].)

Respecting appellants' contentions as alleged in their purported third cause of action, it is enough to say the assertion of rights secured by article I, section 1 of the California Constitution[2] is made only in conclusionary form, and that there appears no adequate foundation which would support claims of federal constitutional infringements based upon requisite action by the state sufficient for that purpose. While it may be true that Petrolane leases a berth from the Los Angeles Harbor Commission for the periodic unloading of its LPG product, that its pipeline from the docking facility to its storage tanks passes through portions of publicly owned lands and that several government entities are involved in various fashions when LPG is unloaded following overseas transport, such factors neither alone nor in the combination present provide the nexus required to fairly characterize the activities of an admittedly private corporation as those of the state itself. (See *Burton* v. *Wilmington Pkg. Auth.* (1961) 365 U.S. 715 [6 L.Ed.2d 45, 81 S.Ct. 856].) "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." (*Jackson* v. *Metropolitan Edison Co.* (1974) 419 U.S. 345, 350 [42 L.Ed.2d 477, 483, 95 S.Ct. 449].)

The order appealed from is affirmed.

Fleming, J., and Compton, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 24, 1980. Bird, C. J., was of the opinion that the petition should be granted.

---

[2]"Section 1. All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."