0 L.R.A. 533

[S. F. No. 203.   Department Two.—December 17, 1896.]

# HENRY PETERS, APPELLANT, *v.* C. E. BOWMAN, RESPONDENT.

NEGLIGENCE—ACTION FOR DEATH OF INFANT—DROWNING IN POND ON VACANT LOT—EMBANKMENT BY CITY—TRESPASS—DUTY AND LIABILITY OF OWNERS.—The owner of a vacant lot upon which a pond of water has accumulated by reason of an embankment erected by the city in the grading of the street, preventing the flow of surface water from the lot, owes no duty to trespassers to keep the water from accumulating upon the premises, nor to keep the lot guarded against trespasses by children, and is not liable for the death of a child from drowning in the pond while trespassing in the lot.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   A. A. SANDERSON, Judge.

The facts are stated in the opinion of the court.

*George D. Collins,* for Appellant.

This case comes within the principle of the "turntable cases." The principle is not restricted to machinery. (*Lynch* v. *Nurdin,* 1 Q. B. 29; *Birge* v. *Gardner,* 19 Conn. 507; 50 Am. Dec. 261; *Bransom* v. *Labrot,* 81 Ky. 641; 50 Am. Rep. 193; *Malloy* v. *Hibernia Bank* (Cal. April 22, 1889); *Plumley* v. *Birge,* 124 Mass. 57; 26 Am. Rep. 645; *Coppner* v. *Pennsylvania Co.,* 12 Ill. App. 600; *Penso* v. *McCormick,* 125 Ind. 116; 21 Am. St. Rep. 211; *Haughey* v. *Hart,* 62 Iowa, 96; 49 Am. Rep. 138; *Mullaney* v. *Spence,* 15 Abb. Pr., N. S., 323.) The owner of land is bound to anticipate the interference of children with anything on his land tempting them to play therewith, and to make suitable provision against the same, and against consequent injury to such children. (*Powers* v. *Harlow,* 53 Mich. 515; 51 Am. Rep. 154; *Barrett* v. *Southern Pac. Co.,* 91 Cal. 296; 25 Am. St. Rep. 186; *Smith* v. *O'Connor,* 48 Pa. St. 222; 86 Am. Dec. 582; *Paducah etc. R. R. Co.* v. *Hoehl,* 12 Bush, 49; *Kansas Cent. R. R.* v. *Fitzsimmons,* 22 Kan. 690; 31 Am. Rep. 203; 1 Thompson on Negligence, 305; 2 Thomp-

son on Negligence, 1192; 2 Shearman and Redfield on Negligence, sec. 705.) What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years. (*Keefe* v. *Milwaukee etc. R. R. Co.*, 21 Minn. 207; 18 Am. Rep. 393; Beach on Contributory Negligence, sec. 206; *Lynch* v. *Nurdin, supra.*) It is no answer to say that the child was a trespasser. (*Barrett* v. *Southern Pac. Co., supra;* 2 Thompson on Negligence, 1194; *Hydraulic Works Co.* v. *Orr*, 83 Pa. St. 332; *Loomis* v. *Terry*, 17 Wend. 496; *Marble* v. *Ross*, 124 Mass. 49; *Dixon* v. *Bell*, 5 Maule & S. 198; *Gramlich* v. *Wurst*, 86 Pa. St. 80; *Malloy* v. *Hibernia Bank, supra; Loveland* v. *Gardner*, 79 Cal. 320; *Callahan* v. *Eel River etc. Co.*, 92 Cal. 90; *Railroad Co.* v. *Stout*, 17 Wall. 657.) Defendant is deemed to know that children would play in the pond at the risk of perishing. (*Irvine* v. *Wood*, 51 N. Y. 224; 10 Am. Rep. 603; Civ. Code, sec. 19; Code Civ. Proc., sec. 1963, subd. 3; *Barrett* v. *Southern Pac. Co., supra; Railroad Co.* v. *Stout, supra; Penso* v. *McCormick, supra;* Beach on Contributory Negligence, sec. 206; *Hansen* v. *Southern Pac. Co.*, 105 Cal. 388.) It is no defense that the pond resulted from the official grading of Ashbury street, for it then became the duty of defendant to abate the nuisance caused thereby. (1 Shearman and Redfield on Negligence, secs. 65, 66; 2 Shearman and Redfield on Negligence, sec. 366; *Oakland Ry. Co.* v. *Fielding*, 48 Pa. St. 320; *Boeschling* v. *St. Louis Gaslight Co.*, 73 Mo. 219; 39 Am. Rep. 503; *State* v. *Society etc.*, 42 N. J. L. 506; *Jones* v. *Nichols*, 46 Ark. 209; 55 Am. Rep. 575.)

*Myrick & Deering*, for Respondent.

The deceased was a trespasser. A landowner is not liable for injuries to trespassers which do not result from some wanton and deliberate act. (Wharton on Negligence, 2d ed., 344; Cooley on Torts, 660, 792; *Schmidt* v. *Bauer*, 80 Cal. 565.) The following are decisions where children have been drowned on the land of others; *Klix* v. *Nieman*, 68 Wis. 271; 60 Am. Rep.

854; *Overholt* v. *Vieths*, 93 Mo. 422; 3 Am. St. Rep. 557; *Hargreaves* v. *Deacon*, 25 Mich. 1; *Gillespie* v. *McGowan*, 100 Pa. St. 144; 45 Am. Rep. 365; *Richards* v. *Connell*, 45 Neb. 467; *Clark* v. *Manchester*, 62 N. H. 577; *Charlebois* v. *Gogebic etc. R. R. Co.*, 91 Mich. 59. The rule of the " turntable cases " is not to be extended beyond the case of dangerous machinery. (*Overholt* v. *Vieths*, *supra; Hargreaves* v. *Deacon*, *supra; Richards* v. *Connell*, *supra.*)

McFARLAND, J.—This action was brought by plaintiff to recover damages for the death of his infant son, who was drowned in a pond of water upon a lot of land owned by the defendant, Bowman. The jury returned a verdict for the defendant; and the plaintiff appeals from the judgment, and from an order denying his motion for a new trial.

The facts are practically undisputed, and may be stated briefly: Defendant owned the lot in question and resided on it for several years prior to 1889. It was part of what is known as Ashbury Heights, in San Francisco. The land sloped toward the west, and on the westerly side fronted on Ashbury street. It does not appear whether or not it was in a thickly settled neighborhood. In its natural condition, the surface water which came from the lot flowed off through a gully across Ashbury street (over which there was a small bridge) and emptied into a pond a couple of blocks away. At some time prior to 1889, the city of San Francisco graded Ashbury street and threw up an embankment along the street and across the gully, and on the westerly side of said lot, to the height of eight or ten feet. This prevented the flow of surface water from the lot, and, on this account, defendant removed his residence, in 1889, to an adjoining county. From that time until 1894, when the boy was drowned, the surface water, being stopped by said embankment, would form, during the rainy season, a pond, which disappeared during the dry season. Defendant did nothing to create the pond, or to prevent

the water from flowing away; and, so far as he is concerned, it may be considered as a natural pond. The lot was not inclosed by a fence or otherwise. After defendant removed his residence he did not often visit the lot, and did not give permission to or invite anyone to go upon it; but children did visit it and play upon the pond, and he must be presumed to have known that fact. He drove children away once, and a policeman did the same several times. The plaintiff knew of the existence of the pond, and knew that his son knew of it, and he "never told him not to go rafting on the pond." The son was over eleven years old, and was "a bright, active boy, an intelligent boy for eleven years, more so than the average boy of that age." He lived with his father, the plaintiff, on Castro street, "four or five blocks over the hills" southerly from the pond. He had been at the pond often before the day of the accident. He was allowed by his father to run on the streets. On February 16, 1894, he went with two other boys to the pond, and while floating on the pond on a rudely constructed raft made of railroad ties, and when running along one of the timbers, he fell off and was drowned. They went onto the pond from the southeasterly side—the side farthest away from Ashbury street.

Upon these facts the verdict was right; and a verdict for plaintiff would have been unwarranted.

The deceased boy was, at the time of the accident which caused his death, a trespasser on the land of defendant; and the general rule undoubtedly is, that the owner of land is under no duty to keep his premises safe for trespassers. The rule has been applied also where there was an implied license. (*Schmidt* v. *Bauer*, 80 Cal. 565.) The exceptions to the general rule are instances where the owner maintains on his land something in the nature of a trap or other concealed danger, known to him, and as to which he has given no warning to others; and instances where there had been something in the nature of a wanton injury to a trespasser,

as where the owner had set spring guns on his premises by which the trespasser had been shot. There is also the instance of an excavation adjoining a public highway into which a traveler on the highway, where he had the right to be, had accidentally fallen. There are other exceptions not necessary to be here mentioned. And the general rule applies to children as well as to adults, with some exceptions hereinafter noticed. "The rule is that ordinarily the owner of premises owes no duty of immunities to trespassers, though the latter be infants." (Whittaker's Smith on Negligence, 2d ed., 67, note, and cases there cited.)

Plaintiff seeks to take this case out of the principle above stated by applying to it what is now known as the rule of the "turntable cases." That rule, which is a marked exception to the general principle, has been approved in many of the states, and in others has been repudiated. It must be taken as approved in this state by the decisions of this court in *Barrett* v. *Southern Pac. Co.*, 91 Cal. 296, 25 Am. St. Rep. 186, and other cases cited by appellant. The rule originated in a case where a railroad company had erected on its land, near a public way, a turntable, and left it unlatched and unprotected, and young children, attracted by the turntable, went upon it to play and started it in motion, whereby one of them was injured; and the rule as thus applied rested on the ground that the immature judgment of a young child could not well determine or provide against the danger of meddling with such machinery, and that, therefore, the railroad company was liable for legal negligence in erecting it and leaving it exposed as an attraction to children, and a temptation to them to intermeddle with it. (See *Barrett* v. *Southern Pac. Co.*, *supra*, and cases cited on page 303.) But the rule of the turntable cases is an exception to the general principle that the owner of land is under no legal duty to keep it in a safe condition for others than those whom he invites there, and that trespassers take the risk of injuries from ordinary visible causes; and it should not

be carried beyond the class of cases to which it has been applied. And the cases to which the rule has been applied, so far as our attention has been called to them, are nearly all cases where the owner of land had erected on it *dangerous machinery,* the consequences of meddling with which are not supposed to be fully comprehended by infant minds. It has also been applied to a few other cases where the owner, by some affirmative act, has caused some artificial danger to exist on his premises, as in the case of *Bransom* v. *Labrot,* 81 Ky. 638, 50 Am. Rep. 193, cited by appellant, where the defendants had "stacked a large quantity of lumber in one large and irregular pile, so negligently and badly done that as the deceased, an infant, was playing near it, one of the timbers fell upon and killed him." It is not contended by appellant that the rule of the turntable cases has ever been applied to facts like those in the case at bar; his contention is that the reasoning and philosophy of the rule *ought* to extend it to a case like the one at bar. But the same reasoning does not apply to both sets of cases. A body of water—either standing as in ponds and lakes, or running as in rivers and creeks, or ebbing and flowing, as on the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowledge of which is common to all; and there is no just view consistent with recognized rights of property owners, which would compel one owning land upon which such water, or part of it, stands or flows, to fill it up, or surround it with an impenetrable wall. However, general reasoning on the subject is unnecessary because adjudicated cases have determined the question adversely to appellant's contention. No case has been cited where damages have been successfully recovered for the death of a child drowned in a pond on private premises who had gone there without invitation; while it has been repeatedly held that in such a case no dam-

ages can be recovered.   It was directly so held in *Klix*
v. *Nieman*, 68 Wis. 271, 60 Am. Rep. 854, in *Overholt* v.
*Vieths*, 93 Mo. 422, 3 Am. St. Rep. 557, in *Hargreaves*
v. *Deacon*, 25 Mich. 1, in *Gillespie* v. *McGowan*, 100 Pa.
St. 144, 45 Am. Rep. 365, and in the recent case of
*Richards* v. *Connell*, 45 Neb. 467.   In the last-named
case, the complaint alleged that the plaintiff's infant son
was drowned in a pond on defendant's land in the vicin-
ity of a public school, and the other facts alleged were
almost exactly the same as those alleged and proven in
the case at bar; but the trial court sustained the demur-
rer to the complaint on the ground that it did not state
a cause of action, and, on appeal, the supreme court of
Nebraska affirmed the judgment.   The court, in its
opinion, after reciting the averments of the complaint,
say: "The single question presented by the record is
whether the owner of a vacant lot upon which is situ-
ated a pond of water, or a dangerous excavation, is re-
quired to fence it or otherwise insure the safety of
strangers, old or young, who may go upon said prem-
ises, not by his invitation, express or implied, but for
the purpose of amusement or from motives of curiosity.
The authorities we find to be in substantial accord, and
sustain the proposition that, independent of statute, no
such liability exists."   After citing authorities, and dis-
tinguishing the cases from those where injuries result
from lawful use of sidewalks and streets near dangerous
excavations, the court further say: "We are referred to
a number of cases which counsel argue sustain the
plaintiff's right to recover on the facts alleged, and
which may be classified as follows: 1. Cases in which
the owner of land has made or permitted a dangerous
excavation, embankment, or the like, so near a public
highway as to injure one in the rightful use thereof.
. . . . 2. Cases in which the owner has negligently
left exposed dangerous machinery likely to attract chil-
dren, and resulting in their injury.   Illustrative of this
class, which constitute a *recognized exception to the rule*,
are the so-called turntable cases.   3. Cases where the

plaintiff was injured while upon the defendant's prem-
ises by invitation of the latter, and where the negli-
gence consists in a failure to keep such premises in a
reasonably safe condition. But in no case has a recov-
ery been allowed on a state of facts substantially like
those alleged in the petition under consideration. It
follows that the judgment of the district court must be
affirmed." It will be observed that the supreme court
of Nebraska recognizes the rule of the turntable cases,
and distinguishes the case under consideration from
those cases; and this is an answer to the contention of
appellant that the authorities cited by respondent are
from courts in which the rule of the turntable cases
was repudiated. That rule was also recognized in the
two cases above cited from Missouri and Michigan.

It may be well to notice briefly one or two of the other
cases in point. In *Klix* v. *Nieman, supra,* the plaintiff's
son fell into a pond on defendant's land which had been
caused by water collecting in an excavation, and was
drowned. The case was very similar to the one at bar,
and the supreme court of Wisconsin, in delivering its
opinion, says, among other things, as follows: "So the
single question presented is: Was it the duty of the
defendant to fence or guard this hole or excavation on
his lot (which it does not appear he made, or caused to
be made), where surface water collected, in order to
secure the safety of strangers, young or old, who might
go upon or about the pond for play or curiosity? If the
defendant was bound to so fence or guard the pond,
upon what principle or ground does this obligation rest?
There can be no liability unless it was his duty to fence
the pond. It surely is not the duty of an owner to guard
or fence every dangerous hole, or pond, or stream of
water on his premises, for the protection of persons
going upon his land who had no right to go there. No
such rule of law is laid down in the books, and it would
be unreasonable to so hold."

In *Overholt* v. *Vieths, supra,* the eight-year-old son of
plaintiff had fallen into a pond of water partly on defend-

ant's land, which had been formed by water collecting
in an excavation which had been made by quarrying
several years before the accident.   The plaintiff had a
verdict for ten dollars, and the case was reversed.   The
court alluded to the cases which go upon the turntable
doctrine, and said: "Whilst the authorities above cited
recognize the liability of the owner, if a child is injured
by *dangerous machinery*, so situated and exposed that it
will naturally attract children, who cannot be expected
to comprehend the danger of its use, and takes no pre-
caution to prevent access to it, and thereby impliedly
invites children to it, they distinctly deny the liability
of a lotowner under the facts disclosed in this case."
The court also say that "the facts in evidence would
have justified the court in directing a verdict for defend-
ant."

In *Hargreaves* v. *Deacon, supra,* a child had fallen into
an uncovered cistern on defendant's land.   The court,
in its opinion, discussed at length the principles involved
in the case, and, after noticing the decisions which de-
clare the turntable doctrine, says: "We have examined
the decisions with some care, and can find no support
to any doctrine which would authorize a recovery in
the case before us.   We cannot help feeling much sym-
pathy for the sad case of a child who was only follow-
ing the natural and innocent curiosity of his age when
he met with the accident which caused his death.   But
there is nothing to indicate any wanton or inhuman
disposition in the defendants, and no illegality in the
management of their business, and they have violated
no right of the plaintiff or his intestate."

In *Gillespie* v. *McGowan, supra,* plaintiff's son, eight
years old, had fallen into a cistern on defendant's land
which had been abandoned, but had once been used in
connection with brickmaking.   The court, in delivering
its opinion, among other things, say: "We are unable
to see anything in this case to charge the defendants
with negligence in not inclosing their lot or guarding
the well.   There was no concealed trap or deadfall, as

in *Hydraulic Company* v. *Orr*. The well was open and visible to the eye. No one was likely to walk into it by day, and this accident did not occur at night. A boy playing upon its edge might fall in, just as he might in any pond or stream of water. In this respect the well was no more dangerous than the river front on both sides of the city, where boys of all ages congregate in large numbers for fishing and other amusement. Vacant brickyards and open lots exist on all sides of the city. There are streams and pools of water where children may be drowned; there are any quantities of surface where they may be injured. To compel the owners of such property either to inclose it, or to fill up their ponds and level the surface so that trespassers may not be injured, would be an oppressive rule. The law does not require us to enforce any such principle, even where the trespassers are children. We all know that boys of eight years indulge in athletic sports. They fish, shoot, swim, and climb trees. All of these amusements are attended with danger, and accidents frequently occur. It is a part of the boy's nature to trespass, especially where there is tempting fruit; yet I have never heard that it was the duty of the owner of a tree to cut it down because a boy trespasser might possibly fall from its branches. Yet the principle contended for by the plaintiff would bring us to this absurdity, if carried to its logical conclusion. Moreover, it would charge the duty of the protection of children upon every member of the community except their parents."

The foregoing are a few of the many authorities which are particularly applicable to the case at bar, and show that in a case like this there can be no recovery. Under these circumstances, it is useless to consider the points raised by appellant on the instructions of the court on the subject of the contributory negligence of plaintiff, and of the boy who was drowned. Under no view of the case could a verdict for the plaintiff be sust

The judgment and order appealed from ar

HENSHAW, J., and TEMPLE, J., concurred.

A petition for a hearing in Bank having been filed, the same was denied on the 19th of January, 1897, and the following opinion rendered thereon:

BEATTY, C. J.—A rehearing of this cause is denied, but the statement contained in the Department opinion, to the effect that no similar case had been cited in which damages were allowed, requires correction. The case of *Pekin* v. *McMahon*, 154 Ill. 141, 45 Am. St. Rep. 114, was noted on the margin of appellant's brief, but escaped attention. There are circumstances which distinguish that case from this—particularly with respect to the culpability of the defendant, but the similarity is sufficient to justify counsel in his claim that his position is supported by a case in point. I can only say that the reasoning of the opinion in that case has failed to convince me, and that the decision stands alone and without other support than may be found in the turntable cases from which the supreme court of Illinois was unable to distinguish it. I think, however, that there is a distinction which relieves us of the necessity of extending an exceptionally harsh rule of liability to such a case.

A turntable is not only a danger specially created by the act of the owner, but it is a danger of a different kind to those which exist in the order of nature. A pond, although artificially created, is in nowise different from those natural ponds and streams which exist everywhere, and which involve the same dangers and present the same appearance and the same attractions to children. A turntable can be rendered absolutely safe, without destroying or materially impairing its usefulness, by simply locking it. A pond cannot be rendered inaccessible to boys by any ordinary means. Certainly no ordinary fence around the lot upon which a pond is situated would answer the purpose; and, therefore, to make it safe, it must either be filled or drained, or, in other words, destroyed. But ponds are always useful, and often necessary, and where they do not exist natur-

ally, must be created in order to store water for stock and for domestic purposes, irrigation, etc. Are we to hold that every owner of a pond or reservoir is liable in damages for any child that comes uninvited upon his premises and happens to fall in the water and drown? If so, then upon the same principle must the owner of a fruit tree be held liable for the death or injury of a child who, attracted by the fruit, climbs into the branches and falls out. But this, we imagine, is an absurdity, for which no one would contend, and it proves that the rule of the turntable cases does not rest upon a principle so broad, and of such rigid application, as counsel supposes. The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumber-pile cases, and others of a similar character. But the owner of a thing dangerous and attractive to children is not always culpable, and therefore is not always liable for an injury to a child drawn into danger by the attraction. It is necessary to discriminate between the cases in which culpability does and does not exist. In the Illinois case cited by counsel, the city of Pekin was held to have been culpable in excavating a deep pit within the city limits, which afterward filled up

with water.   It might be granted that that case was well decided and the principle of the turntable cases properly applied, without holding that this defendant is similarly liable.   There the existence of a pond in a thickly peopled quarter was due to the act of the party charged. Here, the existence of the pond was due to the exercise, by the city of San Francisco, of a power and authority which the defendant could not lawfully resist.   By the act of the city, and without any fault on his part, his lot was converted into a pond.   He might, it is true, have filled it up; but he was no more bound to do so than if it had been a natural pond, because it was in no respect more of a nuisance than it would have been if it had been there before the city was laid out.

The facts being undisputed, it is the province and the duty of the court to decide, as matter of law, whether a defendant has been guilty of culpable negligence, and I think that it would be most unjust to hold that in this case the defendant has omitted any duty that he owed to the child of plaintiff.

The case of *Malloy* v. *Hibernia Bank* (Cal., April 22, 1889), which is also much relied upon by counsel, was altogether different in its circumstances, and the culpable negligence of the defendant was clear and evident.

Rehearing denied.