[Civ. No. 19850. Second Dist., Div. Two. June 14, 1954.]

JAMES ELWOOD WARD, Appellant, v. OAKLEY COMPANY (a Corporation) et al., Respondents.

Jerome Weber for Appellant.

James G. Scarborough, Leonard Comegys, J. Gregg Evans, Chase, Rotchford, Downen & Drukker and Otto M. Kaus for Respondents.

McCOMB, J.—From a judgment in favor of defendants predicated upon the sustaining without leave to amend of their demurrer to plaintiff's second amended complaint in an action to recover damages under section 377 of the Code of Civil Procedure for the wrongful death of plaintiff's two children, plaintiff appeals.

*Facts*: The second amended complaint purports to allege eight causes of action. The first four apply to the wrongful death of plaintiff's decedent James Elwood Ward, Jr., and the last four are identical except in that they apply to the wrongful death of plaintiff's decedent William Gerard Ward. Therefore we shall refer hereafter to the first and fifth causes of action as the first cause of action, to the second and sixth as the second, etc.

Defendants Oakley Company, J. W. Oakley and Bella W. Oakley will be referred to as defendants Oakley; defendants Crail Brothers, Rotary Materials Company and Ed Crail will be referred to as defendants Crail; and plaintiff's decedents as plaintiffs.

The second amended complaint alleged the following facts in the respective causes of action:

### First Cause of Action

Defendants Oakley were the owners of a portion of Bixby Slough and on September 8, 1951, defendants Crail were lessees of the land owned by defendants Oakley; on that day plaintiffs lost their lives; the land owned by the Oakleys and leased by the Crails was almost covered by a large body of water, namely Bixby Slough; the shoreline of the water varies with the seasons; the slough receives water from a large watershed; the water flowing into the slough carries with it

silt, colloids and a relatively small quantity of fine sand; the colloidal materials thus carried into the slough are so fine in texture as to remain suspended in solution and in the course of geological time great quantities of these colloids have become deposited to great depths on the bed of the slough and these materials are commercially adaptable.

Defendants Crail, under agreement with defendants Oakley, engaged in a mining operation in the course of which they removed from the slough hundreds and thousands of tons of these colloids by means of a bucket and drag line for commercial use; great quantities of these colloids were deposited on the upland and "elsewhere in the submerged areas."

The colloidal material deposited on the upland, when dehydrated, is firm, but when submerged becomes viscous plastic solid which reverts to a semiplastic state when agitated by running, walking or wading.

A deposit of such colloids was on the shore near a rock and oil driveway on Vermont Avenue and this deposit had no vegetable growth on it, forming convenient access to the water; this deposit was covered with sand in certain places. The lands involved are near major highways, near a housing development which accommodates 2,000 children, and are an attractive play area for children. There have been six previous drownings in the water in prior years, involving children under the age of 12, and parts of the land not affected by the mining operation were not unsafe for walking, wading or swimming; the mining operation has been abandoned without precaution to safeguard children, the area remains accessible, but was unposted and unguarded; the dangerous condition of the area is not apparent or obvious to children and it is practical to fence it or to take other precautions; defendants knew, or should have known, that children were accustomed to play on the land and that children would not discover the danger because of their youth. The condition of the soil is also said to be the artificial result of the mining operation. Defendants permitted the children to come onto the area by their failure to take any measures to warn them against entering the area or by their failure to take any precautions to prevent harm to the children.

It is also alleged that plaintiffs entered with the "consent, express or implied, of defendants and each of them" and were dragged and sucked under by the mud while wading.

## Second Cause of Action

The second cause of action repeats in substance all the allegations of the first, except the conclusion that the children entered with the consent, express or implied, of defendants and adds the allegation that there was a dredging barge on the water which was used by defendants in connection with the mining operation; that the youngsters were drowned while wading to or around the barge and that defendants permitted children to play around the barge.

## Third Cause of Action

The third cause of action incorporates all the allegations of the first cause of action and adds allegations to the effect that the condition created and maintained by defendants was a public nuisance.

## Fourth Cause of Action

The fourth cause of action includes the allegations of the first concerning the ownership of the land, the lease to defendants Crail for the purpose of engaging in a mining operation which resulted in excavations being made below the water level. It further alleges the abandonment of the mining operation without fencing the so-called excavations.

*Questions*: First: *Did the first count allege a cause of action under the provisions of section 342,[1] volume 2, Restatement of the Law of Torts, 1934, page 932, and the decision in Newman v. Fox West Coast Theatres, 86 Cal.App.2d 428 [194 P.2d 706]?*

*No.* Where a person goes on premises of another without invitation and as a bare licensee, and the owner of the property acquiesces in his presence, if injury is sustained by reason of a mere defect in the premises the owner is not liable since the licensee takes all the risks arising from the condition of the premises. (*Fisher* v. *General Petroleum Corp.*, 123 Cal.App.2d 770, 777 [5] et seq. [267 P.2d 841].)

In *Fisher* v. *General Petroleum Corp., supra,* it was expressly held that the rule announced in section 342 of the Restatement of the Law of Torts, *supra,* so far as it pertained

---

[1]Section 342 reads: "A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and (b) invites or permits them to enter or remain upon the land, without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to warn them of the condition and the risk involved therein."

to licensees was not the law in California. (See *Fisher* v. *General Petroleum Corp., supra,* 879 [9].)

With reference to *Newman* v. *Fox West Coast Theatres, supra,* the case merely held that where as in such case defendants' failure to comply with its duty constituted active negligence, under the law in California defendant was liable. In the present case there is no allegation of active negligence on the part of defendants, nor may any inference thereof be drawn from the facts which are alleged. Likewise in the Newman case plaintiff was an invitee, while in the case at bar the injured parties were merely licensees. Therefore *Newman* v. *Fox West Coast Theatres, supra,* is not here applicable.

Since in the instant case count I alleged that plaintiffs were merely licensees on defendants' property, and there is a total absence of any allegation of an overt act on the part of defendants or either of them which resulted in the unfortunate accident, the above stated rule is here applicable and the trial court properly sustained the demurrer to the first count.

Second: *Did the second count state a cause of action on the theory that defendants maintained an attractive nuisance?*

*No.* █ It is settled that a body of water, natural or artificial, does not constitute an attractive nuisance which will subject the owner to liability for trespassing children who are attracted thereto and are drowned. (*Peters* v. *Bowman,* 115 Cal. 345, 347 et seq. [47 P. 113, 598, 56 Am.St.Rep. 106] ; *Demmer* v. *City of Eureka,* 78 Cal.App.2d 708, 710 [1] [178 P.2d 472].)

█ There is an exception to this rule where the death of a child is caused by an artificial, uncommon, dangerous and concealed contrivance constituting a trap, which can be readily safeguarded without destroying its usefulness or imposing upon the owner an undue burden. (*Sanchez* v. *East Contra Costa Irr. Co.,* 205 Cal. 515, 518 [2] [271 P. 1060] ; *Faylor* v. *Great Eastern etc. Co.,* 45· Cal.App. 194, 199 [187 P. 101].)

█ The essential elements of a cause of action under the "hidden or concealed trap" exception are (a) that the· dangerous hazard causing death be artificially created by the owner, (b) it be so concealed as to constitute a trap, and (c) that it can be readily guarded without destroying its usefulness or placing upon· the owner an undue burden.

Count II alleges that the attractive nuisance consisted of a barge maintained on the premises by defendants. However, there is no allegation that the barge caused or contributed to the death of either minor. Under these circumstances the maintenance of the barge does not bring the case under the attractive nuisance doctrine, despite the conclusion stated in the pleading that its maintenance in connection with the mining operations constituted such a nuisance. There is a total absence of any allegation of a causal connection between the maintenance of the barge or the beach surrounding the waterway, or the beach surrounding the slough, and the unfortunate drownings. In fact, from the pleading the contrary appears, the allegation being that the deaths were caused by the dangerous mud beneath the waters.

The discussion in the following cases shows that plaintiffs have failed to allege a cause of action under the attractive nuisance doctrine as applied in California.

*Beeson* v. *City of Los Angeles,* 115 Cal.App. 122 [300 P. 993], was a suit by a parent to recover damages for the death of her 10-year-old son who fell into a water hole in a storm drain maintained by the defendant and was drowned. Judgment in favor of the defendant after the sustaining of a demurrer to plaintiff's amended complaint was affirmed on appeal and petition for a hearing in the Supreme Court was denied. Appellant argued that under her complaint the hole constituted a concealed trap under the attractive nuisance doctrine as applied in the Sanchez case. (205 Cal. 515.) The court, upon the authority of *Morse* v. *Douglas,* 107 Cal.App. 196, 198 [290 P. 465], and other cases cited, stated the rule as follows (pp. 126, 127):

"In order to constitute an attractive nuisance there must be an appliance or contrivance that is artificial, uncommon, dangerous and constituting a trap for a young child, which can be made safe easily and without destroying its usefulness."

The court distinguished the facts of the Sanchez case as follows (pp. 127, 128):

"In the Sanchez case the defendant maintained an open irrigation ditch about three feet deep through which it conveyed irrigation water to its consumers. In the bottom of this ditch there was constructed an unprotected and unguarded siphon down which the water rushed. While the plaintiff's minor son was playing in the water of the ditch he fell into, or was sucked into, this siphon and was drowned.

This state of facts brings this case within the attractive nuisance doctrine as announced and established in California. The siphon was a contrivance or appliance constructed by the owner of the ditch and was a hidden danger and a trap for a young and inexperienced child. It was artificial and not natural. Its dangers could have been guarded against easily without destroying or even affecting its usefulness.

"In the instant case the pool was not a contrivance or an appliance created by an act of the owner of the property. It was caused either by the water falling into the drainage ditch from the cement drain or by the banks of the ditch caving in and forming a dam, probably by both.

"It has been repeatedly held in California that a pond, excavation, or pool of water is not an attractive nuisance under the definition of the term adopted here. (*Loftus* v. *Dehail*, 133 Cal. 214 [65 P. 379]; *Peters* v. *Bowman*, 115 Cal. 345 [47 P. 113, 56 Am.St.Rep. 106]; and *Polk* v. *Laurel Hill Cemetery Assn.*, 37 Cal.App. 624 [174 P. 414, 418].)"

In *Melendez* v. *City of Los Angeles*, 8 Cal.2d 741 [68 P.2d 971], similar facts were alleged in the amended complaint to which a demurrer was sustained without leave to amend. Appellant contended that his case fell under the "hidden trap" exception as applied in the Sanchez case. The Supreme Court granted a hearing after decision of the appellate court for the purpose of determining whether the rule announced in the Beeson case or the doctrine of the Sanchez case should govern. In accepting the former and rejecting the latter, the court said in part (p. 745):

"It is clear from the recited allegations that the complaint is framed to state a cause of action under the attractive nuisance doctrine as recognized in this jurisdiction if it may, under the facts, be so alleged. This exception to the general rule that the owner of land is under no obligation to keep it in a safe condition for trespassers is based upon the principle that one who maintains upon his land something in the nature of a trap or concealed danger is under a duty to use ordinary prudence and foresight to prevent an injury to children which might be expected where it can be guarded against without placing an undue burden upon the owner of the land and his right to make a beneficial use of it."

The court discussed the Beeson and Sanchez cases as follows (pp. 746, 747):

"There also [*Beeson* v. *Los Angeles*], the pool of water was formed by a storm drain in which muddy water stood

at an average depth of approximately one foot except at one end where there was a pit or hole about seven or eight feet in depth concealed by the muddiness of the water and the debris, and caused by the emptying of the water into the open drainage ditch from a cement conduit with such force as to dig out the floor of the open drainage ditch. There also, notice of the dangerous condition of the ditch and of the fact that children played there and failure to remedy the situation were alleged in the complaint. It was held that the doctrine of attractive nuisance did not apply on the ground that the concealed hole was not an artificial contrivance or appliance maintained by the owner of the ditch and, on this ground, the case was distinguished from *Sanchez* v. *East Contra Costa Irr. Co.*, 205 Cal. 515 [271 P. 1060]. In that case a child fell into an open irrigation ditch of the average depth of three feet and slipped into a tunnel which carried the water under a creek. The water in the canal was muddy and the opening of the tunnel could not be seen. It was held that the shallow muddy water in the canal, the concealed opening of the tunnel of a much greater depth which was wholly unguarded constituted a trap; that, while the children assumed the risk of the open, obvious, notorious danger incident to the canal, they did not assume the risk of an unknown, concealed and unguarded danger and therefore the case came within the doctrine of attractive nuisance.

"These two cases are not at variance when weighed in the light of all the circumstances. In the former case the court took into consideration the common knowledge that the perils of water are instinctively known even by a boy of ten years of age and the further fact that water running over soil operates against the probability of a continuous even bed. . . . These matters of common knowledge should be applied in the instant case and differentiate it from the Sanchez case. In the latter case there was a concealed contrivance which no one would suspect. And common knowledge again tells us that the remark of the learned justice in the Beeson case that the boy in the Sanchez case either slipped or was 'sucked' into the syphon was justified."

In support of its decision in the foregoing case, the court quoted at length from *Peters* v. *Bowman, supra,* wherein the court, in denying a rehearing, speaking through Chief Justice *Beatty*, said in part (p. 356):

"The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a

child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumber-pile cases, and others of a similar character.''

In *King* v. *Simons Brick Co.*, 52 Cal.App.2d 586 [126 P.2d 627], the complaint sought damages for the death of a 12-year-old boy who, while wading in the shallow perimeter of an abandoned clay pit filled with opaque water, fell into a deep hole and was drowned. The court pointed out the distinguishing features of the Sanchez and Faylor cases to be the concealed unguarded syphon in the open irrigation ditch in the first, and the hidden stope in the floor of the mining tunnel in the second, and affirmed the judgment for defendant following the sustaining of a demurrer to the complaint upon the authority of the Beeson and Melendez cases.

In *Betts* v. *City & County of San Francisco*, 108 Cal.App.2d 701 [239 P.2d 456], plaintiff recovered damages for the drowning of his 7-year-old boy in a public park reservoir when he slipped down a steep, mossy and wet spillway into the water. On appeal plaintiff sought to support the judgment under the hidden or concealed danger theory. The appellate court reversed the judgment on the ground that the hazard causing death was an open source of danger and the perils thereof should have been obvious to the boy. A hearing was denied by the Supreme Court.

*Reardon* v. *Spring Valley Water Co.*, 68 Cal.App. 13 [228 P. 406], was an appeal from a judgment in defendant's favor after demurrer sustained. The complaint alleged that defendant owned a reservoir in a populous neighborhood, which was unguarded and easily accessible from public streets; that children were accustomed to play therein, which fact was known to defendant; that defendant maintained in the

reservoir an unsecured rowboat; that plaintiff's minor son, attracted to the boat, boarded it, floated out into the reservoir, fell into the water and was drowned. Plaintiff contended that the maintenance of the unguarded boat which attracted the child to the reservoir removed the case from the application of the established general rule announced in the Peters and Polk cases, *supra.* To this contention the court said (p. 18):

"Can it be that if he falls from a rowboat left upon the water by the owner of the property and is drowned a different legal principle is involved? We think there is no reason for a different rule in the instance last mentioned, and an examination of the following authorities will indicate that there is no change in the principle to be applied because a child was drowned after falling from a floating object placed in the water by the owner of the property (cases cited).

"The cases last cited involved situations where young children fell from rafts or logs into an unfenced body of water upon private property.

"We think that upon neither reason nor authority can the instant case be differentiated in principle from the cases of *Peters* v. *Bowman, supra,* and *Polk* v. *Laurel Hill Cemetery Assn., supra.*"

The demurrer was properly sustained to this count.

Third: *Did the third count allege a cause of action predicated upon the theory that defendants maintained a public nuisance?*

*No.* ▬ A private party does not have a cause of action on account of a public nuisance unless he alleges facts showing special injury to himself in person or property, and of a character different in kind from that suffered by the general public. (*Frost* v. *City of Los Angeles,* 181 Cal. 22, 24 [1] et seq. [183 P. 342, 6 A.L.R. 468].)

In this count there is a total absence of an allegation of any facts showing (a) that the alleged nuisance invaded some right belonging to the people in the neighborhood generally, or (b) that the alleged nuisance infringed any personal right of plaintiffs, resulting in special injuries to them different from that suffered by the public generally.

A public nuisance is defined by the statute (Civ. Code, §§ 3479-3480) to be something which is injurious to health, is offensive to the senses, or an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage

or use of any public street or highway, affecting at the same time an entire community or neighborhood.

Clearly in the instant case there is an entire absence of allegations in count III of the complaint to meet the foregoing requirements.[2] Mr. Chief Justice Gibson in *Kreling* v. *Superior Court,* 18 Cal.2d 884, 886 [2] [118 P.2d 470], thus accurately states the rule here applicable:

"But the complaint does not set forth facts from which it can be concluded that the activities of these petitioners constituted a public nuisance within the terms of our statute. Allegations of fact are required from which it can be determined that the furnishing of such services and supplies is within the statutory definition of 'public nuisance' as activity '. . . which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property. . . .' "

The trial judge properly sustained the demurrer to the third count.

Fourth: *Did the fourth count state a cause of action for violating the provisions of section 24400 of the Health and Safety Code, which reads in part as follows: "Every person . . . who knowingly permits the existence on the premises of any . . . pit . . . dangerous to persons legally on the premises or to minors under the age of twelve years, who fails to cover or fence securely . . . is guilty of a misdemeanor"?*

*No.* ■ Any purported cause of action for violation of the quoted statute was barred by the statute of limitations (Code Civ. Proc., § 340, subd. 3) because it was not filed within one year after the date of the unfortunate drownings.

The cause alleged that the drownings occurred on September 8, 1951. The second amended complaint by which count IV was introduced into the complaint was filed on October 23, 1952.

■ It is settled that if a new cause of action is introduced into a complaint by way of an amendment, the action is deemed to have been commenced so far as such cause of action is concerned at the time of the amendment to the complaint for the purpose of ascertaining whether or not the statute of limitations has barred the prosecution of the new cause of action. (*Rideaux* v. *Torgrimson,* 39 Cal.App.2d 273, 275

---

[2]The mere allegation in the count that the maintenance of the portion of the slough involved constituted a public nuisance is a mere conclusion of law and is insufficient.

[102 P.2d 1104]; *Merchants Nat. Bank* v. *Bentel,* 166 Cal. 473, 478 [137 P. 25].)

Applying this rule to the facts of the present case it is apparent that any cause of action alleged in the fourth count was barred by the statute of limitations since it was not filed until more than one year after the injury is alleged to have occurred, with the result the trial court properly sustained a demurrer to this count.

Affirmed.

Moore, P. J., and Fox, J., concurred.