323 P.2d 1073

William ANNEKER and Ida Anneker, husband and wife, Plaintiffs-Appellants,

v.

QUINN-ROBBINS CO., Inc., an Idaho Corporation, and Independent School District of Boise City, Defendants-Respondents.

No. 8547.

Supreme Court of Idaho.

April 7, 1958.

2

Vernon K. Smith, Boise, for appellants.

Clemons, Skiles & Green, Boise, for respondents.

SMITH, Justice.

Appellants have appealed from a judgment of dismissal of their complaint which

**4**

resulted when the trial court sustained respondents' general demurrers to appellants' complaint, without leave to amend. Relevant alleged facts are hereinafter related.

Respondent Independent School District of Boise City, herein sometimes called the School District, owns the Whittier School Building facing 29th Street constructed on the School District's property between Idaho and Jefferson Streets, bordering 29th Street for approximately 600 feet and extending westerly about 700 feet. Approximately 150 feet of the school grounds, extending westerly from the rear of the school building, is paved for playground purposes; the school property then continues westerly approximately 300 feet to its westerly boundary, where it adjoins the easterly boundary of the property of respondent Quinn-Robbins Co., Inc., herein sometimes called Quinn-Robbins.

Prior to this action respondent Quinn-Robbins had removed gravel from its premises, leaving a gravel pit of approximately 15 acres in area and some 50 feet in depth, which became a pond by seepage and flow of water from Boise River nearby, the main channel of which is situate about 300 feet to the south. The pond extended, to a depth of about 4 feet, into the westerly 20 feet of a natural swale, situate at the southwesterly corner, along the southerly edge of the school grounds; the swale sloped gradually toward the pond; its banks were somewhat precipitous. In this general vicinity, but on its own property near its easterly boundary, respondent Quinn-Robbins had placed discarded truck beds, motor vehicles and similar equipment.

Appellants allege that their minor son approximately 3 years of age (under school age), about 10:00 o'clock a. m., July 7, 1953 (school vacation time), escaped the attention of his mother, an appellant, and with a companion went to play upon the Whittier School grounds, and was attracted to the southwesterly corner of the school premises; that the minor then wandered close to the edge of the gravel bank of the natural swale situate on the school property, a few feet from the property line separating the school property from that of respondent Quinn-Robbins, and in the near vicinity of the latter's discarded equipment; that thereupon the bank gave way, causing the minor to tumble down the bank of the swale into the water with resultant death by drowning.

Appellants then allege the joint and concurrent negligence of respondents, in allowing each described condition to exist, as a proximate cause of alleged wrongful death of the minor, for which appellants seek recovery of general and special damages.

We shall first dispose of appellants' assignment that the trial court erred in sustaining respondent Quinn-Robbins' general

demurrer and dismissing the complaint as to such respondent.

Appellants seek to invoke the attractive nuisance doctrine; in so doing they urge attraction of the minor to the discarded equipment situate on Quinn-Robbins' premises, close to the westerly boundary of the school property, near the natural swale. Appellants assert that the latent danger inherent in the locality permits application of the attractive nuisance doctrine.

This Court has heretofore considered the attractive nuisance doctrine as applied to pools and ponds of water. Bicandi v. Boise Payette Lbr. Co., 55 Idaho 543, 44 P.2d 1103, and Bass v. Quinn-Robbins Co., Inc., 70 Idaho 308, 216 P.2d 944, 946. Appellants admit that the Bass case involved the identical pond as in this case, but argue dissimilarity between the facts of the two cases.

This Court in the Bass case held that a pond, even when situate in a thickly populated area does not constitute an attractive nuisance where the dangers in it are open and apparent; said the Court:

"A pool or pond is not an 'attractive nuisance,' such as to render the owner liable for the drowning of a child, where the dangers inherent in it are open and apparent, and there is no hidden, concealed or unusual danger or trap." Citing many authorities.

See also Bicandi v. Boise-Payette Lbr. Co., supra; King v. Simons Brick Co., 52 Cal. App.2d 586, 126 P.2d 627; Ward v. Oakley Co., 125 Cal.App.2d 840, 271 P.2d 536; Villani v. Wilmington Housing Authority, 9 Terry, Del., 450, 106 A.2d 211; Wood v. Consumers Co., 334 Ill.App. 530, 79 N.E.2d 826; Plotzki v. Standard Oil Co. of Ind., 228 Ind. 518, 92 N.E.2d 632; Holifield v. Wigdor, 361 Mo. 636, 235 S.W.2d 564; Fitch v. Selwyn Village, 234 N.C. 632, 68 S.E.2d 255; Dennis v. Spillers, 190 Okl. 311, 185 P.2d 465; Meyer v. General Electric Company, 46 Wash.2d 251, 280 P.2d 257; 56 Am.Jur., Waters, sec. 436, p. 850; Annotation, 36 A.L.R., Ponds, p. 224.

Ward v. Oakley, 125 Cal.App.2d 840, 271 P.2d 536, 540, was an action grounded upon the attractive nuisance theory, for the death of a child drowned in a pond; therein the California Court made the following announcements:

"It is settled that a body of water, natural or artificial, does not constitute an attractive nuisance which will subject the owner to liability for t--spassing children who are attracted thereto and are drowned. (Peters v. Bowman, 115 Cal. 345, 347 et seq., 47 P. 113, 598; Demmer v. City of Eureka, 78 Cal.App. 2d 708, 710 [1], 178 P.2d 472.)

"There is an exception to this rule where the death of a child is caused by an artificial, uncommon, dangerous

and concealed contrivance constituting a trap, which can be readily safeguarded without destroying its usefulness or imposing upon the owner an undue burden. (Sanchez v. East Contra Costa Irr. Co., 205 Cal. 515, 518 [2], 271 P. 1060; Faylor v. Great Eastern, etc. Co., 45 Cal.App. 194, 199, 187 P. 101.)

"The essential elements of a cause of action under the 'hidden or concealed trap' exception are (a) that the dangerous hazard causing death be artificially created by the owner, (b) it be so concealed as to constitute a trap, and (c) that it can be readily guarded without destroying its usefulness or placing upon the owner an undue burden."

■ The great weight of authority holds that the artificial character of the water hazard will not support the attractive nuisance doctrine, and has no bearing on liability or nonliability. See Annotation, 8 A.L.R.2d p. 1292, sec. 33, Artificial character of hazard.

■ The fact that a raft, logs or other object may be floating on a pool or pond does not of itself constitute an attractive nuisance so as to render the owner liable. Barnhart v. Chicago, M. & St. P. Ry. Co., 89 Wash. 304, 154 P. 441, L.R.A.1916D, 443; Smith v. McGoldrick Lumber Co., 124 Wash. 363, 214 P. 819; Mellas v. Lowdermilk, 58 N.M. 363, 271 P.2d 399; Ward v. Oakley, supra; Bicandi v. Boise-Payette Lbr. Co., supra; Bass v. Quinn-Robbins Co., supra, and authorities therein cited. Annotations, 8 A.L.R.2d p. 1298, sec. 42 and p. 1349, sec. 70.

■ Nor does the presence of shiny or other objects attractive to children constitute a hidden peril. In Holifield v. Wigdor, 361 Mo. 636, 235 S.W.2d 564, 567, a five-year-old child was drowned in a water-filled hole which had been dug for installation of bright and shiny gas tanks. The court, in affirming a judgment denying a recovery, used language as follows:

"If we assume that the deceased child was attracted to the Scott property by the bright and shiny tanks, the water-filled hole and the fresh earth around the hole, as appellants argue, the evidence fails to show that such conditions were inherently dangerous and thus constituted a dangerous and attractive nuisance."

■ Steep, precipitous, smooth or slippery banks of a pool or stream, when such condition is natural, visible and readily apparent, do not constitute a hidden peril. McCabe v. American Woolen Co., C.C., 124 F. 283, affirmed 1 Cir., 132 F. 1006, steep, precipitous banks; Cox v. Alabama Water Co., 216 Ala. 35, 112 So. 352, 53 A.L.R. 1336, slime-slick, 45-degree concrete bank; Rallo v. Herman Const. Co., 291 Mo. 221,

236 S.W. 632, precipitous banks of a pond formed in a quarry; White v. Kanawha City Co., 127 W.Va. 566, 34 S.E.2d 17, concrete 45-degree banks; Somerfield v. Land & Power Co., 93 Kan. 762, 145 P. 893, perpendicular banks. Annotation, 8 A.L.R. 2d p. 1296, sec. 37, Precipitous or slippery sides or banks.

■ Appellants attempt to bring this case under the attractive nuisance doctrine by pleading the presence of respondent Quinn-Robbins' discarded automotive equipment as the attraction which lured the minor to its near vicinity at the southwestern corner of the school premises, where the minor met his death by drowning in the natural swale.

No existent, latent or hidden danger in the discarded automotive equipment is alleged or indicated merely by its inert presence on respondent Quinn-Robbins' property. Nor do appellants allege that the minor was injured by reason of any hidden or latent risk or danger existent in the discarded equipment.

Appellants also plead that by virtue of the minor being attracted by respondent Quinn-Robbins' discarded equipment, he became subjected to certain dangerous instrumentalities, i. e., the swale's precipitous gravel bank which was likely to and did give way when the minor ventured to an outermost edge thereof, thereby precipitating him into the water in the swale with resultant death. Appellants also plead that Quinn-Robbins is responsible for the presence of the water in the swale since it flowed therein from Quinn-Robbins' pond.

Nowhere have appellants pleaded any artificial creation on the part of respondent Quinn-Robbins, as causative of the minor's accidental death other than said respondent's creation of the pond by the artificial means of mining gravel, which, as hereinbefore pointed out, is not supportive of Quinn-Robbins' liability on the theory of an attractive nuisance, according to the great weight of authority.

Further, the swale, and its precipitous gravel bank, as indicated by appellants' pleading, are nothing more than natural formations, with attendant dangers, if any, being patent and discernable.

The trial court properly sustained the demurrer of respondent Quinn-Robbins to appellants' complaint followed by judgment of dismissal as to said respondent.

We shall next dispose of appellants' assignment that the trial court erred in sustaining the general demurrer of respondent Independent School District of Boise City and dismissing the complaint as to such respondent.

Appellants assert applicability of what they call the "Playground Rule" against respondent School District, citing 65 C.J.S. Negligence § 40, p. 505. The essence of that rule appears to be that the owner's permissive use of his premises as a playground

may give the children playing thereon the status of licensees. The text at p. 506 sets out definitive limitations of the rule in language as follows:

"This duty, however, does not extend to supervising the children's play so as to prevent injury to them, to arranging or maintaining the property so that its use as a playground will involve no danger of injury, or to safeguarding everything which may cause injury to them. It has been held that the owner's liability for injuries to children *playing on the premises is limited to accidents arising from latent dangers and does not extend to injuries caused by the injured child's own immature recklessness, such as by falling or jumping from stationary objects or structures.*" (Emphasis supplied.)

The rule upon which appellants rely has the identical application to the facts and circumstances pleaded, as does the attractive nuisance doctrine. The existent dangers, if any, were discernible and patent and not hidden or latent; and as respects respondent School District, the objects and formations allegedly involved in the chain of causation—the natural swale, its precipitous banks of gravel and water in the swale, —all fall in the category of natural and not artificial formations.

Further approaching the ruling of the trial court on the general demurrer, it must be borne in mind that respondent School District is an agency of the state, organized under legislature enactments pursuant to the mandate of the State Constitution, requiring the legislature "to establish and maintain a general, uniform and thorough system of public, free common schools." Idaho Const. Art. IX, sec. 1.

The law applicable to defendant School District is set forth in Bullock v. Joint Class "A" School District No. 241, 75 Idaho 304, 272 P.2d 292, 296, as follows:

"The defendant [school] district, organized under the laws enacted by the legislature in pursuance of this constitutional mandate, is an agency of the state. Independent School Dists. v. Common School Dist. 1, 56 Idaho 426, 55 P.2d 144, 105 A.L.R. 1267. Its board of trustees, while acting within the scope of the authority conferred by law, performs a governmental function for the state. It is generally held that a school district is not liable for torts committed by its trustees or employees. Weist v. School Dist. No. 24, 68 Or. 474, 137 P. 749, 49 A.L.R.,N.S., 1026; 78 C.J.S. Schools and School Districts § 320 a; 47 Am.Jur., Schools, § 56. It is also generally held that the trustees or other governing officers of a school district, in the absence of a statute imposing liability, are not personally liable for tort occurring while they are in good faith acting in their official ca-

pacity, and within the scope of their authority, and especially in matters involving their official judgment or discretion. 160 A.L.R. 7, Annotation; 78 C.J.S. Schools and School Districts §§ 129, 210, pp. 923, 1115; 43 Am.Jur., Public Officers, § 273, 47 Am.Jur., Schools, §§ 44, 60."

■ School Districts are ordinarily not liable for personal injuries sustained by persons, though they be other than pupils, arising from the condition of the school premises, in the absence of a statute creating such liability. Bullock v. Joint Class "A" School District No. 241, supra; Brown v. City of Oakland, 51 Cal.App.2d 150, 124 P.2d 369; Bingham v. Board of Education of Ogden City, 118 Utah 582, 223 P.2d 432; Smith v. Hefner, 235 N.C. 1, 68 S.E.2d 783; Thompson v. Board of Education, etc., 12 N.J.Super. 92, 79 A.2d 100; Reed v. Rhea County, 189 Tenn. 247, 225 S.W.2d 49; Hummer v. School City of Hartford City, 124 Ind.App. 30, 112 N.E.2d 891; Bragg v. Board of Public Instruction, 160 Fla. 590, 36 So.2d 222; Annotation 40 A.L.R. 1091; McQuillin, Municipal Corporations, 3rd Ed., Vol. 18, secs. 53.05 and 53.93. A statement of the general rule appears in 47 Am. Jur., Schools, p. 337, sec. 58, as follows:

"In harmony with the general doctrine governing liability in the case of injury to a pupil [nonliability in absence of statute, 47 Am.Jur., Schools, sec. 57, p. 335], it is established that ordinarily, a school board, district, or municipal corporation operating a school is not, in the absence of statute, liable to one other than a pupil for personal injuries sustained on account of the condition of the school premises."

Appellants' complaint, for the reasons aforesaid, fails to state facts sufficient to constitute a cause of action against respondent School District, on the so-called playground theory.

Appellants assert a further right of recovery against respondent School District grounded on a liability insurance policy written in favor of the District. This policy, issued by United Pacific Insurance Company, insured respondent School District for the period commencing June 30, 1952 and ending June 30, 1955, at 12:01 a. m., for "Comprehensive Bodily Injury and Property Damage Liability." The policy recites that it applies "to accidents which originate during the policy period * * * as respects any automobile, * * *." The policy coverage included respondent School District's liability growing out of "A(I) Automobile—including the loading and unloading thereof" and "A(III) All Other Exposures."

The policy provisions, lines 42–59, relate to liability growing out of the use of automobiles whether owned, hired or nonowned. The policy then sets out that "All Other

**10**

Exposures" means exposures not defined in lines 42–59 and if coverage is not afforded under coverages A(I) and B (B coverage is not involved herein)

"shall include the exposure arising out of (1) the ownership, maintenance or use of automobiles, (a) while in or upon premises (other than public ways used in common with others) occupied by or under the control of the insured, (b) by an independent contractor or by any employee of an independent contractor, while engaged in operations for the insured, and (2) the liability assumed or retained by the insured under any contract or agreement wholly in writing for the operation, maintenance or use of automobiles."

Further on in the policy it is recited:

"The terms of this policy shall apply separately to each automobile insured hereunder but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability."

The Legislature in 1947 enacted Title 33, chap. 8, of Idaho Code, relating to the transportation of school pupils in this State, decreeing the purposes of the Act and prescribing conditions, duties and responsibilities relating to school transportation systems thereby authorized to be established and providing, inter alia, "for liability insurance and conditions of policy contracts," the Act to be known and cited as the "School Transportation Act."

I.C. sec. 33–801, subsections (6) (a) and (b) provide that liability insurance shall be carried on each school bus for protection of pupils, and of persons other than pupils, such authorized liability insurance to cover the liability of a school district for damages on account of bodily injury or death resulting from the operation of the transportation system.

I.C. sec. 33–801, subsec. (6) (c) provides in part as follows:

"Waiver of Immunity. In consideration of the premium * * * it shall be a part of the policy contract * * * that the insurance company shall not be entitled to the defense of governmental immunity of the insured. Immunity of the boards of trustees of school districts operating a transportation system, against liability damages, is hereby waived to the extent of the liability insurance carried * * *."

The policy of liability insurance here involved was authorized by I.C., Title 33, chap. 8, aforesaid, covering the liability of respondent School District growing out of the operation of its school transportation system, recognized by the chapter to be a governmental function.

The occurrence involved in this case did not grow out of the operation of

respondent School District's transportation system; hence the liability coverage afforded by the policy cannot be extended to such occurrence. The parties did not intend that the policy encompass any liability coverage except as authorized by the legislative enactment; nor could the parties contract for any liability coverage in excess of that legislatively authorized. Ford v. City of Caldwell, 79 Idaho 499, 321 P.2d 589.

Appellants rely on the case of Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609. The case under consideration here is distinguishable from the Pigg case, since therein the decisive factor was the endorsement on the policy of the insurance company's agreement not to claim exemption from liability of the insured, the State, by reason of its sovereign immunity; such endorsement estopped the company from in anywise urging that defense.

The policy herein referred to was written to cover respondent School District's tort liability growing out of the operation of its school transportation system. Its coverage was permitted by legislative waiver of the School District's governmental immunity to the amount of the policy coverage. The waiver, I.C. sec. 33–801, subsec. (6) (c) became a part of the contract of insurance and was read into it. Ford v. City of Caldwell, supra. The legislature by this waiver limited respondent School District's liability to that growing out of the operation of its school transportation system.

Here, there existed no contract whereby the insurer agreed to insure against the liability claimed in this action, i.e., for an alleged wrongful death extraneous the School District's school transportation activities; nor was there any undertaking by the insurer, either in the policy or by endorsement, to insure respondent School District against the liability claimed herein, nor is there any sufficient allegation that any premium was charged or paid, for coverage against any such liability.

The trial court properly sustained the general demurrer of respondent, Independent School District of Boise City, to appellants' complaint, followed by judgment of dismissal as to said respondent.

The judgment of the trial court is affirmed. Costs to respondents.

PORTER and TAYLOR, JJ., and NORRIS, District Judge, concur.

McQUADE, J., concurs in the conclusions reached in the opinion.